STATE *v.* HAROLD FROTTEN.

February Term, 1946.

Present: MOULTON, C. J., SHERBURNE and STURTEVANT, JJ., CLEARY and HUGHES, Supr. JJ.

Opinion filed May 7, 1946.

*Collins M. Graves* for the respondent.

*William Travers Jerome*, State's Attorney, and *Alban J. Parker*, Attorney General, for the State.

MOULTON, C. J. The respondent was indicted for the crime of murder in the first degree, and was tried and convicted. He admitted the commission of the homicide, but pleaded self defense and insanity. Before his arraignment and plea he moved to quash the indictment. The motion was denied, subject to his exception. This is the first question for our consideration.

The motion was based upon matters not appearing upon the face of the record and was therefore an inappropriate procedure. A motion to quash does not allow joinder of issues of fact depending upon the testimony of witnesses, *State* v. *Ward*, 60 Vt 142, 153, 14 A 187; *State* v. *Intoxicating Liquor*, 44 Vt 208, 216; *Landgrove* v. *Plymouth*, 52 Vt 503, 510; and see *State* v. *Cocklin*, 109 Vt 207, 215, 194 A 378; *State* v. *Colby*, 98 Vt 96, 97, 126 A 510. The proper method of raising such issues is by a plea in abatement. *State* v. *Ward, supra*, at p. 156. But here a trial of fact upon the mo-

tion was had without objection. (See *State* v. *Intoxicating Liquor*, *supra*) and where a pleading entitled a motion to quash has the requisites of a plea in abatement, in a case where such a plea is the proper procedure, it will be treated as such here. *State* v. *Young*, 82 W Va 714, 97 SE 134. It is apparent, from the briefs of the respondent and the State, that no question as to the nature of the proceeding was raised below.

■ It appears that the venire, by the authority of which the sheriff summoned the grand jury, was not signed by the county clerk. The fact was not alleged in the respondent's written motion, but the transcript shows that in the course of the hearing thereon the point was developed by the testimony of the clerk and the production of the venire as an exhibit, and was thus clearly brought to the attention of the trial court. We treat it therefore as an issue raised below. Moreover, as we shall see, it is a question touching the jurisdiction of the grand jury to find the indictment, and consequently the jurisdiction of the trial court to proceed with the trial thereon, and so, under the circumstances, might be presented in this Court for the first time. *Aguirre* v. *Aja*, 113 Vt 123, 125, 30 A2d 88 and cas. cit. P. L. 1545, as amended by No. 31, § 3, Acts of 1941, is as follows: "Eighteen judicious persons within each county may, in the discretion of the judges of the county court, be summoned to appear at any stated or special term of such court, at such time during such term as the judges direct, to serve as grand jurors of such county, and the clerk of such court shall issue a venire accordingly." P. L. 1550, after directing that the sheriff or his deputy shall, at the office and in the presence of the clerk, draw the names of the grand jurors required to be summoned from the respective towns, provides that "the county clerk shall issue a venire commanding such officer to summon the persons so drawn."

■■ A venire is the common law process of *venire facias juratores* which is "a writ directed to the sheriff commanding him to cause to come from the body of the county, before the court from which it issued, on some day certain and therein specified, a certain number of qualified citizens to act as jurors in the said court." 2 Bouvier's Law Dictionary (Rawles' 3rd Revision) 3390. At common law the precept was either in the name of the King or of two or more justices of the peace. 2 Hale, Pleas of the Crown, 154; *Commonwealth* v. *Burton*, 4 Leigh (Va.) 645, 26 A. D. 337,

338. The only essential difference between the writ as it was in the time of Sir Matthew Hale (1609-1676) and as it now exists in this jurisdiction is in regard to the issuing authority. Under the statutes above quoted this duty is mandatory upon the county clerk, who is the clerk of the county court (P. L. 1394), when the judges of that court have decided in their discretion that a grand jury shall be summoned. In other respects the common law still prevails, and at common law a venire is necessary to authorize the sheriff to summon the grand jurors. *People* v. *McKay,* 18 Johns, NY 212, 216; *United States* v. *Antz,* 16 F 119, 124; *State* v. *Lightbody,* 38 Me 200, 201. A grand jury summoned without process cannot return a valid indictment. *Nicholls* v. *State,* 5 NJL 539, 543; *State* v. *Ridley,* 9 NJL 293, 299; Joyce on Indictments (2nd ed) para. 76, p. 91. In *State* v. *Fleming,* 66 Me 142, 22 AR 552, 554, a venire issued without the seal of the Court attached to it was said to render an indictment illegal and void, and it was held that: "Every indictment to be valid must be found by a grand jury legally selected and competent to act at the time the indictment is found."

In this State a seal is not required for the validity of process, but all writs must be signed by the authority designated by statute. Without such signature a writ is void and confers no jurisdiction, *Ramsey* v. *McDonald,* 108 Vt 180, 181, 184 A 691, and cas. cit.; *Howe* v. *Lisbon Savings Bank,* 111 Vt 201, 209, 14 A2d 3, et seq. where the decisions upon this point are reviewed. There is no question of waiver here.

It cannot be held that the respondent should have made his objection, before or at the time of organization of the grand jury, or be considered to have waived that objection, when he had no right to be heard by that body in the proceedings taken against him. *State* v. *Ward,* 60 Vt 142, 155, 14 A 187. Besides this, there can be no waiver when, because of a fundamental defect the grand jury is without jurisdiction to act. *People* v. *Gray,* 261 Ill. 140, 103 NE 552, 49 LRANS 1215, 1219.

A venire is issued by the clerk only when it is signed by him. See *Blaine* v. *Blaine,* 45 Vt 538, 543. The omission is something more than a technical irregularity, such as is held in *State* v. *Brewster,* 70 Vt 341, 351, 40 A 1037, 42 LRA 444, and cas. cit. not to affect the validity of an indictment. The principle governing

writs in civil causes applies here. Without the signature of the clerk the venire was illegal and void; the grand jury summoned in accordance with it was without jurisdiction to act, the indictment against the respondent is invalid, and should have been abated.

The State, in its brief, asks that, if it should be held that the lack of the signature is a material defect, we will order the Clerk to sign the venire *nunc pro tunc,* in order to clear the record. But void process cannot be amended, and this is what we should be attempting to do if we were to comply with the request. *Ramsey* v. *McDonald, supra; State* v. *Fleming, supra.*

A further ground of objection to the indictment is that the venire commanded the sheriff to summon the grand jurors "to appear before the Hon. County Court to be holden at Manchester within and for the county of Bennington, 7th day of June A. D. 1945." The fault found is that the summons did not designate a regular or special term of court. The June Term of Bennington County Court was convened, according to law, upon that day. If there was irregularity in the respect claimed, which we do not decide, it was only technical in nature, according to the rule in *State* v. *Brewster,* 70 Vt 341, 351, 40 A 1037, 42 LRA 444; and did not of itself render the proceedings of the grand jury of no effect.

It also urged that the return of the sheriff shows that he summoned the grand jury on June 22, 1945. This was clearly an inadvertence, for the grand jury attended on the 7th. The Court had the discretionary power to permit an amendment of the return to show the true time of the summons. *Bent* v. *Bent,* 43 Vt 42, 47; and see *Desany* v. *Thorp,* 70 Vt 31, 41, 39 A 309. The mistake did not affect the validity of the indictment.

Still another complaint is that the venire describes those to be summoned as "persons nominated by the authority of the towns in said county . . . . and returned to the County Clerk of said County to serve as Grand Jurors." The printed form upon which the venire was made out was appropriate for use under the law as it was when P. S. 3515 was in force and the grand jurors were nominated in each town by the board of civil authority of that town. But No. 76 of the Acts of 1917 (Now P. L. 3412) makes the preparation of a list of the names of persons qualified to serve as grand and petit jurors from each town in the county the duty of

a board of jury commissioners, consisting of the assistant judges of the county court and the county clerk. In view of what has been said concerning the invalidity of the indictment for another reason, all that is necessary to say about this irregularity is that it is one that is not at all likely to occur in the future, and so need be given no further attention.

The respondent claims that the indictment is void because of the circumstances under which it was found and returned by the grand jury. The undisputed facts, shown by the transcript, are these; On June 7, 1945, the grand jury indicted the respondent, and were then excused by the court, subject to call. The respondent was arraigned and pleaded not guilty. Thereafter, and before the day set for the trial, the presiding judge examined the indictment and discovered the omission of certain words therein which, as he considered, rendered it defective as charging murder in the first degree. The grand jurors were recalled, and assembled on June 18. The presiding judge inquired of them whether they had intended to indict the respondent for the crime of murder in the first degree, and received an affirmative answer, whereupon he explained the defect and informed them that they had been called back to return the kind of an indictment that they had previously voted. At the suggestion of the Court the State's Attorney entered a nolle prosequi to the pending indictment and the Court informed the grand jury that: "We have prepared another indictment which properly sets forth the charge as voted by you," and said further that all that was necessary to be done was that the foreman should sign it as a true bill and present it, and that they might retire if they wished to do so. In the presence of the three members of the court, the State's Attorney, and the court reporter, the grand jury voted to return the new indictment and it was signed as a true bill and presented by the foreman.

 This procedure was irregular and is not to be commended. It is within the power of the court to resubmit to a grand jury an indictment, which is defective or imperfect, (Joyce on Indictments 2 ed § 130, p. 155) and in such case it is not necessary that the witnesses shall be recalled and re-examined. Joyce on Indictments 2 ed § 123, p. 149; 2 Wharton, Criminal Procedure, 10 ed § 1293, p. 1754. But it is not proper for the court to draw up an indictment, the sufficiency of which it may be called upon

later to decide, and submit it to the grand jury. The duty of preparing the bill is placed by statute upon the State's Attorney, P. L. 3409; *Gould* v. *Parker,* 114 Vt 186, 189, 42 A2d 416, 159 ALR 622.

In *State* v. *Brewster,* 70 Vt 341, 40 A 1037, 42 LRA 444, it was held that the presence of a stenographer in the grand jury room, taking notes .of the testimony, at the instance of the State's Attorney and with the consent of the court and the grand jury did not invalidate an indictment, no prejudice to the respondent having been shown. But the opinion states that it "is to be understood as deciding no more than that the irregularities shown in this case, under all the circumstances set forth in the plea, are insufficient to abate the indictment. The ends of justice are always best accomplished when the proceedings are strictly in accordance with the provisions of the statute and well recognized proceedings of the common law. Much care should be exercised that no irregularities should be able to intervene in any proceeding touching the life and liberty of the citizen" (p. 352). In the case before us the presence of the court, State's Attorney, and court reporter who was not engaged in taking down the testimony of witnesses during the deliberations of the grand jury seems to carry the rule applied in the Brewster case to an extreme. But whether the respondent's rights were prejudiced thereby is a matter which we need not decide. Here again the situation is not likely to arise again.

Nothing need be said concerning the respondent's motion in arrest of judgment which was based upon the same claims that we have just considered.

Although the judgment below must be reversed and the indictment abated it does not follow that the respondent may not be held for the action of another grand jury legally summoned and constituted. He has not been in jeopardy since no valid judgment has been rendered against him. *State* v. *Emery,* 59 Vt 84, 88, 7 A 129. A trial and judgment upon a fundamentally defective indictment is not a ground upon which to sustain a plea in bar based upon former jeopardy. Bishop, New Criminal Law, 8th ed, para. 1021(2) p. 613, para. 1027(4) p. 616; and see *State* v. *Whipple,* 57 Vt 637, 640; *State* v. *Gosselin,* 110 Vt 361, 367, 6 A 2d 14; *Shepler* v. *State,* 114 Ind 194, 16 NE 521, 523. And

where the grand jury finding an indictment is illegally organized and the indictment is for that reason invalid, a trial had upon it will not bar a subsequent prosecution for the same offense. *Keith* v. *State,* 53 Ohio App. 58, 4 NE2d 220, 224.

Several exceptions taken upon trial may be considered in view of the probability that the questions raised·therein will again be presented.

■ The State offered in evidence three photographs of the partially clothed body of the victim of the homicide, showing in gruesome detail the injuries that caused his death. The respondent objected on the ground that the exhibits were offered for the purpose of exciting sympathy and that the injuries could readily be described by the witness. The photographs were received, subject to the exception. The ruling was within the discretion of the trial court. *Hutchinson* v. *Knowles,* 108 Vt 195, 204, 184 A 705; *Leland* v. *Leonard,* 95 Vt 36, 38, 112 A 198. Furthermore the exhibits tended to show that the death was caused in the manner and by the instruments as claimed by the State.

■ After his arrest and before the trial the respondent had been committed to the State Hospital for the Insane, for the purposes of observation as to his sanity. Dr. Chittick, the Superintendent of the Hospital, was called as an expert witness by the State, and having been duly qualified as such, testified that in his opinion the respondent was sane. On cross examination he said that this opinion was based in part upon information given him by his assistants. These assistants were not produced as witnesses, and the facts reported by them were not given in evidence. The respondent moved to strike out Dr. Chittick's testimony as to the respondent's sanity, because it was based in part upon hearsay. The motion was denied, and the respondent excepted. It is error to admit the opinion of an expert based in whole or in part on facts the existence of which is not within the tendency of the evidence. *Platt, Admx.* v. *Shields, et al,* 96 Vt 257, 273, 119 A 520, and cas. cit; *Bliss* v. *Moore, et al,* 112 Vt 185, 190, 22 A2d 315. Such opinion cannot be based upon hearsay, as it clearly was in the present case. *Howarth* v. *Adams Express Co.,* 269 Pa 280, 112 A 536, 538; *Johnson* v. *Valvoline Oil Co.,* 131 Pa Super 266, 200 A 224, 226; *Kelly* v. *Kelly,* 103 Md 548, 63 A 1082, 1084.

It is held in *United States* v. *Aluminum Co. of America,* 35 F

Supp 820, 823, that: "Opinion testimony by an acceptable expert resting wholly or partly on information, oral or documentary recited by him as gathered from others, which is trustworthy and which is practically unobtainable by other means, is competent even though the first hand sources from which the information came cannot be produced in court." This holding goes further than our decisions have ventured, but, in any event, it would not be applicable here, because Dr. Chittick did not recite the information received by him, and it did not appear that his informants were not available as witnesses. We need not, moreover, consider what the result would be if the hearsay testimony had been received without objection.

There was evidence tending to show that at the time of the homicide the respondent was under the influence of intoxicating liquor. He requested the court to charge that: "Drunkenness may reduce a homicide from murder in the first degree to murder in the second degree or manslaughter, if it is so extreme as to prevent the existence of intention to kill." It is the established rule in this state that voluntary intoxication does not excuse or palliate crime, or operate to reduce the degree of homicide where the perpetrator was previously in the requisite condition of mental responsibility." *State* v. *Stacy,* 104 Vt 379, 407, 160 A 257, 269, 747, and cas. cit. The charge as given was in accordance with the rule, and no exception was taken to it.

Several other requests dealt with the issue of insanity. An examination of the charge shows that the subject was amply covered, in accordance with the approved principles of our law and without exception being taken. The same is true of a request concerning the elements of self defense.

*The indictment is abated and the judgment reversed.*