## State of Vermont v. Carroll B. Pierce

[141 A2d 419]

March Term, 1958.

Opinion Filed May 6, 1958.

*Manfred W. Ehrich, Jr.* for the respondent.

*Frederick M. Reed*, Attorney General, and *Margaret Lillie*, State's Attorney, for the State.

**Hulburd, J.** The respondent was prosecuted for operating a motor vehicle while under the influence of intoxicating liquor. When the case came on for trial in Bennington Municipal Court, difficulty was encountered in drawing a jury. This was because the legislature by No. 51 of the Acts of 1957 had established a new method of impanelling and selecting juries for municipal courts, and in so doing had proceeded to repeal the old one, (See V. S. 47, §1459-60) without allowing sufficient time for the new one to become operative. At the time of the trial, July 18, 1957, a jury list under the new Act was not available, and could be not available, until after February 1, 1958. So far as he could, the trial judge attempted to summon a jury in accordance with the new Act, but his only resort was to the old jury lists under the former law. The

respondent promptly challenged the array. The trial court, remarking that he had anticipated the respondent's objection, sustained it without waiting for argument, and then, as if acting on a preconceived method of procedure, he called upon the sheriff to summon talesmen. Twelve persons were thus drawn, and, after they had been interrogated by both the State's Attorney and counsel for the respondent, were duly sworn by the court as the jury in the case. The respondent challenged none of these talesmen and had no exception noted to the court's action in this regard either at, or before, the swearing-in, or thereafter, but he now claims that "the talesmen summoned on oral order of the court did not constitute a lawful jury."

The respondent recognizes the general rule (see, for example, *Petition of Stowell*, 119 Vt. 298, 302, 125 A2d 807) that a claim made here for the first time is not available on appeal; but in this instance he says he avoids the rule because he is raising a jurisdictional question. In substantiation of this he refers us to *State* v. *Frotten*, 114 Vt 410, 412, 46 A2d 921. In that case the difficulty centered with the grand jury. The jurisdiction of the trial court to proceed with a trial was held to rest upon whether there was a valid indictment. A grand jury summoned by a void venire was said to be without jurisdiction to act and hence any indictment found by it would be invalid. In the *Frotten* case, therefore, the question was truly a jurisdictional one, since without a valid indictment, there was nothing on which to base a trial.

■ The question here pertains only to the petit jury. The prosecution was based upon a complaint of the State's Attorney upon which the trial was proceeding. The question raised by the respondent, however proper, is not jurisdictional and since it is raised here for the first time, it will not be considered under the rule stated above. We think what was said in *State* v. *O'Connor*, 117 Vt 176, 178, 86 A2d 924, 926, is applicable: "As far as appears from the record, he accepted the trial jurors without protest, challenge, or exception. Thus he waived all irregularities and defects, if any, in the respects claimed." To the same effect is the following from 50 CJS, Juries, §251, p. 1012: "A party by failing timely to challenge

or object waives any irregularity in the drawing, or summoning of the jury."

We now come to the respondent's exceptions relating to the admission and submission of evidence as to the results of a blood test made on the respondent. The background-circumstances are as follows: The respondent, while driving his car, had had an automobile accident. He sustained injuries and a Dr. Flood was called. The doctor initially saw the respondent at the scene of the accident at the "McDursky residence." He first found the respondent conscious and sitting in a chair. Following first-aid, the respondent was put in an ambulance, and with the doctor following behind, they all went to the hospital. There the doctor noted a number of things which convinced him that the respondent was under the influence of intoxicating liquor. Neither medication nor the nature of the respondent's injuries seemed to account for his condition. He, therefore, sought permission of the respondent to obtain a blood alcohol test. Pierce, according to the doctor, was conscious but drowsy and had to be stimulated to answer by having his arm shaken. The blood test was explained to him and he was told that the "test if positive would be held against him, but if it proved satisfactory that it would be held in his favor." At this the respondent consented and the sample was taken and upon analysis it was found to contain $0.21\%$ alcohol by weight. The respondent, himself, later testified that he had no memory of the sample being taken. He would have us infer that the sample must have been taken while he was unconscious.

When the result of blood analysis was offered, the respondent objected that "there is no evidence that the respondent was in any condition to give consent—" and "there is no evidence that he was advised that he had a right to refuse to give the blood test." If these objections have any importance, it is sufficient to state that the respondent's position is not borne out by the transcript. Later, after the evidence had been admitted, the respondent moved to strike it from the record "on the ground that on the evidence as it now stands, the taking of the blood test was a violation of the respondent's

rights under both the State and Federal Constitution." This motion was denied and the respondent allowed an exception.

The respondent, in his brief, cites *State* v. *Slamon*, 73 Vt 212, 50 A 1097, 1099, which held that the taking of a letter from the person of a respondent against his will was a violation of the Vermont Constitution as to both Art. 11 of Chapter 1 (guaranteeing against illegal search and seizure) and Art. 10 of Chapter 1 ("That in all prosecutions for criminal offenses no person can be compelled to give evidence against himself"). This holding, however, was expressly stated to have been overruled in *State* v. *Stacy*, 104 Vt 379, 400, 160 A 257, 266, 747, the court saying that "When evidence is offered, the court will take no notice of how it was obtained, whether legally or illegally, whether properly or improperly, nor will it form a collateral issue to try that question." *State* v. *Slamon*, *supra*, therefore does not help the respondent any.

The constitutions of forty-six States provide for a privilege against self-incrimination. In addition Iowa and New Jersey do so by Statute. It is held by the great weight of authority that the constitutional guaranty against self-incrimination extends only to testimonial utterances, oral or written. Illustrative of this view are *Davis* v. *State*, (1948) 189 Md 640, 57 A2d 289; *State* v. *Sturtevant*, (1950) 96 NH 99, 70 A2d 909; *State* v. *Alexander*, (1951) 7 NJ 585, 83 A2d 441; *State* v. *Gatton*, (1938) 60 Ohio App 192, 20 NE2d 265, *State* v. *Cram*, (1945) 176 Ore 577, 160 P2d 283, 164 ALR 952; and see *Holt* v. *United States*, (1910) 218 US 245, 252, 31 S Ct 2, 6, 54 L Ed 1021, 1030, wherein Mr. Justice Holmes stated that the privilege against self incrimination prohibits " * * * the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it becomes material." This language would seem to be consistent with the position that the extraction of blood from the veins involves the production of real evidence and does not involve testimonial compulsion. Regardless of whatever position the federal courts might take under the Fourth Amendment (search and seizure) and the Fifth Amendment (self-incrimination) of the United States Constitution, their decisions are not binding on the States. *State* v. *O'Brien* 106 Vt 97, 102, 170 A 98. Thus, evidence

procured by federal officers in violation of the Fourth Amendment (search and seizure) is not admissible in federal courts. *Weeks* v. *United States*, (1914) 232 US 383, 54 S Ct 341, 58 L Ed 652. Thirty-one States have rejected the rule of the Weeks case, while sixteen have conformed to it. For a review of these state decisions on this problem, see the appendix to Justice Frankfurter's opinion in *Wolf* v. *Colorado*, (1949) 338 US 25, 33, 69 S Ct 1359, 1364 99 L Ed at 1788.

In *Breithaupt* v. *Abram*, (1957) 352 US 432, 435, 77 S Ct 408, 435, 1 L Ed 2d 448, the accused was convicted in New Mexico (see *Breithaupt* v. *Abram*, 58 NM 385, 271 P2d 827) as a result of an analysis of blood extracted from his veins while unconscious. He brought his case before the United States Supreme Court which concluded his conviction did not constitute a violation of due process under the Fourteenth Amendment of the United States Constitution.

In arriving at its decision the court stated at p. 439: "As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in supplying a blood test of this kind to which millions of Americans submit as a matter of course every day, must be set the interests of society." In this respect the court felt that the case should be distinguished from a decision it made slightly earlier, *Rochin* v. *California*, (1952), 342 US 165, 72 S Ct 205, 96 L Ed 183. In this last mentioned case the court decided that the compulsory removal of two narcotic capsules from the defendant's stomach by means of an emetic, constituted such brutality that the capsules thereby obtained would be inadmissible in evidence, in a state court conducting a criminal trial, by virtue of the due process clause of the Fourteenth Amendment. Although perhaps the line separating the *Breithaupt* case and *Rochin* case lacks precise definition, it would seem that the *Rochin* case reaches an opposite result by reason of the element of violence and brutal conduct disclosed. See *People* v. *Spears*, 201 Misc. 666, 114 NYS 2d 869; *People* v. *Kendall*, (1952) 111 Cal App2d 204, 244 P2d 418; *Bratburd* v. *State*, (1952) 200 Md 96, 88 A2d 446. In any event the instant case so closely resembles the *Breithaupt* case that the latter is controlling and not the *Rochin* case. So far as the Federal

Constitution is concerned, the respondent lacks authority for his position except by way of dissent.

■ When we turn to the State Constitutional question the respondent is no better off, as we have seen, on our decided cases. In view of the *Rochin* decision, it might well be that in some future case involving violence and brutal conduct in the securing of evidence, we might have to curtail the rule quoted earlier from *State* v. *Stacy*, 104 Vt 379, 400, 160 A 257, 747, but that problem is not presented by the circumstances disclosed in the record before us. No constitutional right of the respondent has been violated under either Article 10 or 11 of Chapter 1 of our Constitution, as these two Articles have been interpreted by this Court in the decisions noted. Moreover our interpretation of the self-incrimination and illegal search and seizure provisions of our Constitution are in keeping with the decisions of other States bearing on the taking of blood while the respondent is unconscious. The following cases have dealt with this problem at some length. *Block* v. *People*, 125 Colo 36, 240 P2d 512; *People* v. *Duroncelay*, Cal App, 303 P2d 617; *People* v. *Haeussler*, 41 Cal 2d 252, 260 P2d 8; *State* v. *Ayres*, 70 Idaho 18, 211 P2d 142; *State* v. *Cram*, 176 Ore 577, 160 P2d 283, 164 ALR 952; *State* v. *Sturtevant*, 96 NH 99, 70 A2d 909, 911. This last case is very similar to the instant one both on its facts and the wording of the pertinent constitutional provisions. The respondent has attempted to distinguish some of the foregoing cases on the basis of the language found in the various constitutions. We do not believe, in most instances at least, that these holdings can be accounted for on that ground. As was pointed out in *State* v. *Sturtevant, supra*, the provisions in the state constitutions involved here have a common origin and their "variations are not considered to alter the essential meaning" * * * "Whatever their form, the purpose of the provisions may be regarded as uniform; to protect an accused 'from any disclosure sought by legal process against him as a witness' ." We think rather these decisions have resulted from application of such authorities as Wigmore, Evidence (3d ed. 1940) §2263; Model Code of Evidence, Rule 205 (1942) where the idea is advanced that the extraction of bodily fluids does not violate the privilege against self-incrimination. See also,

Uniform Rules of Evidence, Rule 25 (c): "No person has the privilege to refuse to furnish or permit the taking of samples of body fluids or substances for analysis."

The vast weight of authority has permitted for some time the requirement of the respondent that he do certain acts relative to the inquiry into his guilt or innocence. Among these are: (the forced revealing of scars to the jury by defendant in a criminal case), *State* v. *Oschoa*, 49 Nev 194, 242 P 582; (defendant required to place shoes in tracks), *People* v. *Van Wormer*, 175 NY 188, 67 NE 299; (scrapings taken from accused's finger nails), *State* v. *McLaughlin*, 138 La 958, 70 So 925; and see Anno. 164 ALR 967. See also Inbau, "Self Incrimination—What an Accused Person may be Compelled to Do", 38 J. Crim. L. 261.

When viewed from this broad point of view, we are not able to single out the problem we have before us as differing so essentially from others just enumerated as to require a different holding on our part. We hold that this case offers no basis for claiming that the respondent was deprived of his constitutional rights.

From what we have said it necessarily follows, that there was no error in the court's refusal to strike the evidence from the case nor in instructing the jury as follows:

"The law of the State of Vermont does not require the respondent to take a blood test. In this cause a blood test was taken which is to be considered by you as a matter of evidence. The manner in which the State obtained its evidence, that is whether voluntary, or involuntarily, is not the issue for your determination. The entire procedure has been placed before you, together with the en(d?) result of this process. You are to give this test whatever weight and credence as evidence, you believe it is fairly entitled to, in view of all the attendant circumstances."

We have reviewed the entire transcript and are satisfied that the respondent has had a fair trial and that none of his constitutional rights has been violated.

*Exceptions overruled and cause remanded.*

Holden J. and Barney, Supr. J. concur in the result.