### State of Vermont v. Glendon C. Ball

[179 A.2d 466]

January Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 7, 1962

*Peter F. Langrock,* State's Attorney, for the State.

*John T. Conley* for the respondent.

**Barney, J.** A sample of blood taken from the respondent after an accident was offered in evidence at his trial for driving while intoxicated. The respondent claimed that the severity of his injuries kept him unconscious from the time of the accident until some time after the blood sample was taken. He was not under arrest when a doctor called to the scene took the blood at the request of the Bristol chief of police. No evidence tending to show any form of consent by the respondent to the taking of the sample was introduced. Although the doctor testified during the state's case and was cross-examined by the respondent, neither side inquired of him as to whether the respondent's consent was asked or given prior to the taking of the blood. The doctor did say that he found the respondent conscious at the scene of the accident, and that at the hospital he was conscious and, although he would lapse into a deep sleep, he would respond to questioning.

The sample of blood was admitted into evidence at the trial in Addison Municipal Court over the objection of the respondent. At the close of all the evidence the respondent moved to have all the testimony relating to the blood sample and its analysis stricken. The trial judge granted the motion and directed a verdict of acquittal. The state concedes that without the blood analysis evidence, there was not enough evidence of intoxication to entitle it to take the case to the jury. The court stated that its action was based on the failure of the state to comply with the provisions of 23 V.S.A. §§1188-94 in obtaining the blood sample.

These statutory sections were all passed in a single enactment as No. 212 of the Acts of 1959. In substance, they provide that upon arrest of a person for an offense involving the operation of a motor vehicle under the influence of intoxicating liquor or drugs, he thereupon is presumed to have consented to being tested to determine the alcoholic content of his blood, by either blood, urine or breath sample analysis, at his option. This presumed consent is limited, in the case of blood samples, to those taken by a physician, acting in a careful and prudent manner, at the request of an enforcement officer of the department of public safety. When the statutory pre-requisites have been complied with, a driver may refuse to take all tests only at the risk of having his right to operate a motor vehicle suspended for six months, if the arresting officer's belief as to his intoxicated condition had reasonable basis. On trial, the percentage of alcohol in the blood be-

comes the subject of presumptions: 0.05 per cent or less means a conclusive presumption that the driver was not under the influence of intoxicants; more than 0.05 but less than 0.15 gives rise to no presumption either way; and more than 0.15 raises a presumption that the driver was under the influence of intoxicating liquor.

The state took an exception to the directing of the verdict, whereupon the court withheld judgment and exercised its discretionary power to pass the question to this Court. The issues are narrow. The state concedes that it did not follow the statutory procedures that bring "implied consent" into play. The respondent correctly points out that there is nothing in the evidence to raise an issue of actual consent. The question becomes, then, can a non-statutory blood test be received into evidence when proof of consent is lacking.

This is the very question a majority of the Court found to be asked and answered affirmatively in *State* v. *Pierce,* 120 Vt. 373, 141 A.2d 419. Two events, both urged by the respondent in support of the lower court's ruling, compel a re-examination of our former holding which would otherwise control. Both took place subsequently to the decision in the *Pierce* case.

■ The most recent event was the decision of the Supreme Court of the United States in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081. In that case police officers forcibly entered and searched premises suspected of being the hiding place of a fugitive. The occupant objected to their entry without warrant and the police, in the course of their violent entry, roughly handled her. They searched all parts of her quarters and found no trace of the wanted man, but did uncover on the premises some four pictures, alleged to be pornographic, left behind by a former lodger. On this basis Miss Mapp was charged and convicted under an Ohio statute making it criminal to possess such materials. Until the matter was determined by the Supreme Court the issue argued was the constitutionality of the Ohio law making mere knowing possession of such materials a crime. The majority opinion turned the decision on the issue of an illegal search and seizure in violation of the Fourth Amendment. It stands for the proposition that the requirements of due process under the Fourteenth Amendment carry over to the state courts the prohibitions of the Fourth Amendment of the federal Constitution. It is now declared law that it is unconstitutional to receive evidence in state courts which was obtained in violation of rights guaranteed under

the Fourth Amendment. That holding is binding on this Court. *People* v. *Loria,* 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478.

However, the Supreme Court has left in force an opinion written by the spokesman for the majority in the *Mapp* case that specifically holds that taking blood from an unconscious person in a competent manner is not a violation of his constitutional rights. *Breithaupt* v. *Abram,* 352 U.S. 432, 77 S. Ct. 408, 1 L.Ed.2d 448.

The state says that since the *Mapp* case applies only to evidence obtained in violation of constitutional rights, rights not here violated, enough is left of the doctrine of *State* v. *Stacey,* 104 Vt. 379, 401, 160 Atl. 257, 747, to require the lower court to admit the blood analysis. The *Stacey* case stands for the proposition that relevant evidence is not rendered inadmissible because it was illegally obtained.

This contention must be examined in the light of the second event referred to previously. This was the passage of No. 212 of the Acts of 1959 set out above. The respondent claims that it was intended that these statutory procedures for obtaining evidence of the alcoholic content of the blood were intended to be the exclusive manner by which such evidence could be made admissible without the consent of the respondent. This the state disputes, but also takes the stand that even were the statutes so intended, the *Stacey* doctrine would still permit admission of these blood tests. This amounts to saying that the legislature is powerless to affect admissibility by statute.

The law is otherwise. *Crowley* v. *Goodrich,* 114 Vt. 304, 306, 44 A.2d 128, 162 A.L.R. 691; *McKinstry* v. *Collins,* 76 Vt. 221, 228, 56 Atl. 985. So long as the legislature does not run afoul of rights protected by constitutional provisions or interfere with the constitutional functions of the judiciary, it may change evidentiary rules. 1 Wigmore, Evidence, §7, (3d ed. 1940). The legislature's competence in this kind of case is large because the statutes operate as restraints on the state's own manner of proceeding against respondents whose actions are criminal only because the legislature declared them to be so.

Therefore, it must be determined whether the legislature intended that only those chemical analyses of blood alcohol taken in accordance with No. 212 of the Acts of 1959 (now 23 V.S.A. §§1188-94) shall be admissible against a respondent charged with driving while intoxicated.

The legislation in question was enacted during the 1959 session. The decision in *State* v. *Pierce, supra,* 120 Vt. 373, 141 A.2d 419, had been handed down in May 1958, making this the first opportunity the

legislature had had to consider the matter. Prior to this time there were no statutes governing the procedures for collecting blood samples from respondents. Since the 1959 enactment deals at length with the very issue determined in the Pierce case, this suggests that a change in the doctrine of that case was intended. Cf. *Conn* v. *Brattleboro,* 120 Vt. 315, 322, 140 A.2d 6. The direction of change must be sought first from the legislation itself. *Marshall* v. *Brattleboro,* 121 Vt. 417, 419, 160 A.2d 762.

This interpretative problem exists only because the statutes contain no express declaration of purpose. The determination that the legislature did or did not intend the "implied consent" procedure to be the exclusive method of testing blood alcohol for evidentiary purposes in a prosecution for driving while intoxicated must derive from implication. Unfortunately, as often happens, the statutes involved are subject to conflicting interpretations and varying implications.

Undeniably, a strong argument for a legislative purpose to make the prescribed testing procedure of exclusive validity can be founded on the scope and breadth of the legislative act bringing the test methods into being. The manner of taking the tests and the application of the results are carefully detailed. Significantly, no provisions of any kind are made relative to tests taken in any other manner.

If enforcement officials follow strictly the statutory procedures in seeking to test the blood alcohol of a drinking driver, he is presented with what may be a hard choice. He must submit to a test or face possible license suspension for refusing. The state argues that the purpose of the close statutory definition of procedures is not related to the admissibility of the tests at trials, but only to the bringing into operation of these license suspension provisions. Adopting this approach avoids certain shortcomings of the statutes but creates new difficulties. It is not enough to say, as the state does in effect, that if the state is willing to forego resort to the license suspension penalty the respondent ought not to complain if the statutory procedures are not followed exactly.

In spite of the titling, the statutes involved here are not an implied consent law. Consent to the taking of any of the permitted tests is required to be real, for the respondent has the privilege of choice. Nowhere does the statute substitute an implication for an expressed consent to a test. The inquiry must be physically put to the respond-

ent and he may select one of three test modes or refuse entirely, at his option. It is true, as we have seen, that a penalty may follow complete refusal, but the choice is his to make. The only implication possibly involved is that one who applies for an operator's license consents to its suspension if he ever refuses to be tested as the statute provides.

The consequences are important. Under this law, blood tests taken from those unconscious from injury or drink are inadmissible in evidence in a driving while intoxicated prosecution, unless the respondent consents, at some point, either to the taking or the admission of the results. Thus the driver, unconscious from drink, perhaps, avoids the suspension dilemma, while the more circumspect drinker may have to make the hard choice. This is the largest shortcoming of the statute, but others, such as requiring that an officer of the Department of Public Safety be the one to request that the doctor make the test, seem destined to make the testing procedure so cumbersome or prolonged as to render resort to chemical evidence of intoxication useless in many cases.

Even these shortcomings, however, are not enough to overcome the basic weakness of the interpretation urged by the state. To say, as it would have us, that the legislature did not intend to make this statutory design the only permissible way to make admissible the blood alcohol analysis, makes the whole statutory procedure nearly meaningless. 23 V.S.A. §1189 applies the presumptions relating to degrees of intoxication to any chemical analysis admitted in a prosecution for driving while intoxicated. This would, under the state's view, apply to tests taken outside the statutory requirements. If the careful structure of protection for the drinking driver erected by the legislature is to have any vitality, prosecutors ought not to be able to avoid its strictures while gaining the advantages of its presumptions. It cannot be supposed that the legislature deliberately enacted a statute intending it to be so simply circumvented.

Statutory shortcomings of the kind involved here are beyond the corrective reach of this Court. Legislative functions cannot be undertaken in the guise of judicial interpretation. *Donoghue* v. *Smith,* 119 Vt. 259, 267, 126 A.2d 93; *Lewis* v. *Holden,* 118 Vt. 59, 65, 99 A.2d 758; *State* v. *Mahoney,* 122 Vt. 456, 176 A.2d 747, 751.

Therefore, we are constrained to say, in spite of defects, that the statutes require that blood alcohol tests be made according to their pro-

visions for them to be admissible in prosecutions for drunken driving, unless the respondent consents to nonstatutory procedures or does not object to the admission into evidence of test results.

*Judgment that the respondent is not guilty is entered upon the verdict and the respondent is discharged.*