STATE OF IOWA, appellee, v. ROBERT BURNETT FINDLAY, appellant.

No. 52166.

OctoBer 18, 1966.

Patrick J. Life, of Oskaloosa, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and Albert F. Goeldner, County Attorney, of Sigourney, for appellee.

Larson, J.—On April 27, 1965, defendant was indicted for the crime of operating a motor vehicle while intoxicated, he being a second offender. Section 321.281 of the 1962 Code. Pursuant to the provisions of chapter 444, Acts of the Sixty-first General Assembly, relative to the procedure to be followed in imposing enhanced punishment as a result of prior convictions, this indictment was dismissed and an information was filed to conform with the new provision. Trial was had on October 25, 1965, and the jury returned a guilty verdict. On November 17, 1965, judgment was entered against him and he was

ordered to pay a fine of $300 and the costs of prosecution. It was also recommended that no new driver's license be issued to him for a period of sixty days thereafter. When motions for a new trial and in arrest of judgment were overruled, he appealed.

In his brief he poses two questions: (1) Does the taking of a blood sample from an unconscious person violate the due process clause of Amendment 14 to the Federal Constitution or any provisions of the Constitution of the State of Iowa? (2) Does the consideration of the results of a blood test taken from an unconscious person not under arrest violate Amendment 14 to the Constitution of the United States, or any provisions of the Constitution of the State of Iowa, where no express consent is given by the defendant? Under the circumstances revealed by this record, our answer must be in the negative.

At approximately 6:30 p.m. on February 6, 1965, as the defendant, alone, was driving an automobile in a northerly direction on Highway 149 about eight miles south of Sigourney, Iowa, he was involved in a collision with another automobile traveling in the opposite direction. All occupants of the automobiles were injured, and defendant was in a semiconscious condition when he was observed at the scene and when he was taken by ambulance to a Sigourney hospital. He was unconscious when a physician was called to treat him at the hospital. One of the observers who said defendant smelled strongly of liquor was the sheriff, who had been called to the accident scene. This caused him to suspect defendant was intoxicated. Later on his arrival at the hospital the sheriff requested the attending doctor to take a blood sample from defendant. Although the doctor refused because he had already given the defendant preliminary emergency treatment, he did sign a certification to the effect that defendant was not in a conscious condition so as to give a consent to the taking. While defendant had not been arrested, at the direction of the officer a blood sample was taken by a registered nurse then on duty at the hospital. It was placed in a container, delivered to the officer, who then transmitted it by registered mail to an Iowa City laboratory for examination and testing. From the laboratory report it appeared the specimen contained 220 mg. of alcohol per 100 cc.

of whole blood, which the examining doctor said indicated intoxication. Defendant's arrest, trial and conviction followed.

Appellant contends the trial court erred by admitting evidence of a blood test taken while defendant was unconscious because (1) it violated defendant's constitutional right of due process as provided by Amendment 14 and Amendment 4 to the Constitution of the United States, and Article I, section 8, of the Bill of Rights of the Constitution of Iowa, (2) the taking of his blood under the circumstances constituted an invasion of privacy and an unreasonable search and seizure, for there was no actual consent of defendant either as to the taking of his blood or as to the admission of the results of the test in the trial, and (3) there was no necessary arrest of defendant either before or at the time of the taking.

Aside from existing federal authority, it would appear this court is writing on a clean slate as to whether under the circumstances revealed and the statutory law of Iowa it is permissible to introduce in a criminal proceeding evidence relating to a blood specimen taken without warrant from an unconscious person not under arrest. We shall first consider the applicable statutory law of this state.

I. The Sixtieth General Assembly in 1963 enacted what is commonly referred to as the "Iowa Implied Consent Law" (ch. 114, sec. 51, 60th G.A.), now found in chapter 321B, Code of Iowa, 1966. Section 321B.3 (ch. 114, sec. 39, 60th G.A.) provides that any person who operates a motor vehicle upon a public highway, under such circumstances as to give reasonable grounds to believe the person is in an intoxicated condition "shall be deemed to have given consent to the withdrawal from his body of * * * blood * * * and to a chemical test * * * for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out." This section further states the test can be administered only upon the written request of a peace officer having reasonable grounds to believe such person was driving while intoxicated, "and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while in an intoxicated condition." It further provides such person may reject these tests,

and under section 321B.7 his driver's license shall be revoked. A test must be made within two hours after arrest and, upon request, the results of the test shall be made available to the accused.

However, section 321B.5, Code, 1966 (ch. 114, sec. 41, 60th G.A.), the provisions of which were in effect on the 6th of February, 1965, provides: "Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of consent or refusal shall be deemed not to have withdrawn the consent provided by section 321B.3, and the test may be given; provided that a licensed physician shall certify in advance of such test that such person is dead, unconscious or otherwise in a condition rendering him incapable of consent or refusal. *In such case such condition shall obviate the requirements of arrest and advice pursuant to section 321B.6.*" (Emphasis supplied.)

Section 321B.10 provides for the use of this evidence in court proceedings, criminal and civil.

The Iowa Implied Consent Law properly and clearly provides a workable rule governing "searches and seizures", which rule takes into account the "practical demands of effective criminal investigation and law enforcement." Ker v. California, 374 U. S. 23, 32, 83 S. Ct. 1623, 10 L. Ed.2d 726, 737; State v. Polton, 259 Iowa 435, 143 N.W.2d 307. In State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518, we considered the Iowa Implied Consent Law and, although all the questions raised herein were not there presented, held the law constitutional. As we understood counsel in argument, defendant is not challenging the constitutionality of that law. Unless, then, it appears the procedural requirements of that law were not met, and it appears the taking was constitutionally unreasonable, defendant, although unconscious at the time the blood specimen was taken and tested, could not thereafter withdraw his consent to the taking or to the admission of the results of the test when properly preserved and introduced in his trial for driving while under the influence of intoxicating liquor.

There was ample evidence of compliance and the jury so found. Officers investigating the accident had reasonable cause to suspect defendant was intoxicated, obtained a certificate of

his unconsciousness, ordered blood withdrawn in a medically-approved manner, and had it analyzed in a proper laboratory.

Appellant directs our attention to the case of State v. Weltha, 228 Iowa 519, 292 N.W. 148. It is not in point here. There the court properly found the circumstances showed an unreasonable invasion of defendant's constitutional rights and held it reversible error to admit the results of a blood test in evidence. In that case there was no consent given to the *use* of that test when it appeared blood was taken from the accused in an unlawful manner by an unauthorized person. Important procedural requirements necessary to safeguard the individual's rights were not observed. Blood was taken without direction from a peace officer who had probable cause to believe the suspect drove while intoxicated, and the search was not pursuant to an arrest. Conditions such as now appear in the Iowa Implied Consent Law provisions were not followed. His constitutional rights were violated. Upon those grounds we have no quarrel with that decision and feel it does not conflict with our holding here.

II. Neither the Federal nor State Constitution requires a finding that any search of the body of an unconscious person not under arrest, and the seizing therefrom of body fluid for alcoholic determination, is an unreasonable invasion of one's privacy. Amendment 4 to the Federal Constitution and Article I, section 8, of the Iowa Constitution, do not require an arbitrary rejection of all such takings. Circumstances are to be considered, and the test often announced is whether the process of the taking "shocked the conscience." It is the cruel, "brutal" and "offensive" taking which is repulsive to due process. Rochin v. California, 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183, 25 A. L. R.2d 1396; Breithaupt v. Abram, 352 U. S. 432, 435, 77 S. Ct. 408, 1 L. Ed.2d 448, and authorities cited therein.

The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State. Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed.2d 908. It is to secure one's privacy against arbitrary intrusion by the police. Also see Wolf v. Colorado, 338 U. S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782, and

Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933, for the application of this rule to the states. Schmerber held a blood specimen may under certain conditions be taken from one objecting thereto without violating the due process clause. The rationale of the court is that such a test chosen to measure the person's blood-alcohol, under certain conditions, was a reasonable one. It is a highly effective means of determining the degree to which a person is under the influence of alcohol. Such tests are recognized as commonplace in these days of periodic physical examinations, the quantity of blood needed for the test is minimal, and for most people the procedure involves virtually no risk, trauma or pain. Breithaupt v. Abram, supra. Even if significant, it does not appear here that defendant suffered any fear, pain or concern for his health due to the test, nor any religious scruples against such procedure.

This test was given in a hospital by a trained nurse according to the accepted medical practice. There is no claim of resultant infection or pain, and we conclude no constitutional prohibition against the State's minor intrusion into defendant's body under the stringent and limited conditions shown here was violated.

III. Although as a general rule a residence may not be searched without a search warrant unless the search is incident to a lawful arrest (section 751.3, Code, 1962), there are recognized situations in which this rule does not apply to limit or circumscribe reasonable and necessary action by officers of the law. Chapman v. United States, 365 U. S. 610, 81 S. Ct. 776, 5 L. Ed.2d 828; Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436. These cases state, or at least strongly infer, reasonable justification for a search and seizure without a warrant if the "suspect was fleeing or likely to take flight", and if there was probable cause to believe "evidence or contraband was threatened with removal or destruction." Of course, where the reason shown for not obtaining a warrant is only inconvenience to the officers and merely a delay necessary to prepare the papers and present the evidence to the magistrate, the "exceptional circumstance" exception is not met. Such reasons are never very convincing and certainly would not be enough

to justify bypassing constitutional requirements of due process.

The situation is different where the delay will cause the destruction of the evidence, and where as here there is a showing the officer believes delay will result in a loss of the vital evidence necessary either to convict or absolve the defendant of the offense reasonably suspected, there is an "emergency" or "exceptional circumstance" sufficient to justify the search either with or without consent of the suspect. In such a situation, of course, prior arrest is not required if the party is unconscious, under specific provisions of the Iowa law now found in chapter 321B, Code, 1966.

True, under our law, if the suspect is not unconscious or not in a condition rendering him incapable of consent or refusal, there must be a prior arrest and an opportunity given him to withdraw his prior implied consent to the test. Section 321B.3, Code, 1966. But this is not the case at bar, where the evidence shows the officers reasonably believed defendant drove while intoxicated, where he was unconscious when the officer ordered the nurse to take the specimen of blood from defendant in an approved medical manner, and where no arrest had been made until some time after. The public interest requires a holding that the disappearing evidence due to bodily assimilation created an emergency requiring prompt action. Under those conditions we find no unreasonable search and seizure and no substantial violation of defendant's constitutional right of due process.

Breithaupt v. Abram, supra, was also a case in which police officers caused blood to be withdrawn from the driver of an automobile involved in an accident, and the Supreme Court therein found ample justification for the officer's conclusion that the driver was under the influence of liquor. There, as here, the extraction was made by a trained person in a simple, medically-acceptable manner in a hospital. There also the driver was unconscious at the time blood was withdrawn and hence had no opportunity to object to the procedure. The United States Supreme Court, in affirming the conviction, held that under the circumstances the withdrawal did not offend that "sense of justice" of which it spoke in the previous case of Rochin v. California, supra, 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183,

25 A. L. R.2d 1396, where a stomach pump had been used to recover evidence of drug possession. Breithaupt was reaffirmed in the recent case of Schmerber v. California, supra, 86 S. Ct. 1826, at 1830, and the court therein concluded that Breithaupt requires the rejection of petitioner's due process argument and found nothing in the circumstances of that case, or in supervening events, which persuades us that this aspect of Breithaupt should be overruled. Schmerber differed from Breithaupt in that there the blood was withdrawn from a conscious but objecting party after his arrest for driving an automobile while under the influence of intoxicating liquor. As in the Breithaupt case, the court rejected the argument that defendant's due process rights were violated and held the extraction of blood samples from the accused while in the hospital was a reasonable test to measure accused's blood alcoholic level and did not violate his right under the Fourteenth Amendment to be free of unreasonable searches and seizures.

In the recent California case of People v. Huber, 232 Cal. App.2d 663, 43 Cal. Rptr. 65, decided March 8, 1965, we find a case on-all-fours with the case at bar, and the court there unanimously decided that where there was no way to prevent destruction of evidence consisting of the alcoholic content in blood of an unconscious driver, who officers had reasonable grounds to believe was intoxicated and had caused an accident by driving on the highway, there was an emergency or exceptional circumstance justifying the taking of a blood sample in the absence of a warrant, consent or arrest, and admission of the evidence derived from the blood sample did not violate defendant's privilege against self-incrimination or deprive him of due process of law. Therein is discussed the circumstances permitting a search and seizure without warrant and not in connection with arrest, and the court concludes the evidence established such exceptional circumstances as would justify the officer's conduct in the absence of a warrant, consent or arrest. We find the reasoning and the result conforms to our own thinking. There was no unreasonable search and seizure under these circumstances under either federal or state constitutional guarantees. See State v. Rees, 258 Iowa 813, 139 N.W.2d 406.

In Volume 79 of the Harvard Law Review, No. 3, of

January 1966, at pages 677, 678, there appears a comment under the heading of "Constitutional Law—Due Process of Law—Analysis of Blood Extracted without Warrant from Unconscious Suspect is Admissible in Criminal Trial", citing People v. Huber, 232 Cal. App.2d 663, 43 Cal. Rptr. 65 (1965). Therein both Breithaupt and Huber were discussed. While the author believes the assumption that taking blood from a person may not fit under the former cases considering search and seizure, he states, "The fourth amendment requires the exclusion of evidence obtained during a search without a warrant, but the Supreme Court has enunciated two exceptions to this rule: searches incident to arrests and searches of movable vehicles if there is a substantial danger that the vehicle will be removed from the jurisdiction before a warrant can be obtained. [Carroll v. United States, 267 U. S. 132.] The court has also indicated that there may be other 'exceptional circumstances' that will justify a search without a warrant. [Johnson v. United States, 333 U. S. 10, 14, 15.] As the Huber opinion observed, the rationale of the 'movable vehicle' exception seems applicable to blood samples, in view of the fact that alcohol rapidly disappears from the bloodstream. Indeed, blood sampling may present a stronger case for dispensing with a warrant, since movable vehicles are at most only very likely to be unavailable for later inspection, while the alcohol in a suspect's blood is certain to disappear."

While the author wrote before the Schmerber case, he believed there were less objections to the blood withdrawal from an unconscious person than a conscious objecting one. That distinction now seems resolved, and under proper conditions both are permissible.

IV. If the officer ordering the intrusion, as here, reasonably believed he was confronted with an emergency, a situation in which the delay necessary to obtain a warrant threatened "the destruction of evidence" (Preston v. United States, 376 U. S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed.2d 777; Schmerber v. California, supra), he can rightfully order the blood withdrawal and complete the test. The reasonableness of that decision, of course, is always the subject of court review.

It is almost common knowledge, and here there is expert testimony, that the percentage of alcohol in the blood begins to diminish shortly after the drinking stops, that a test taken two hours thereafter will not reflect the true state of intoxication when the vehicle was operated. There was testimony here that the accident occurred about 6:30 p.m. and the test was administered about 8:40 p.m. after the sheriff returned from the scene of the accident. It seems clear any further delay which would have been required to obtain a warrant would have made this test useless. An emergency thus appears to justify the taking. Preservation of the record is necessary and proper.

V. Appellant seems to claim a distinction between the consent to take and the consent to use the results of the test, but we find no merit to this contention. See sections 321B.3 and 321B.10, Code, 1966, on taking and use of tests. He cites two cases in support of his contention. State v. Ball, 123 Vt. 26, 179 A.2d 466, and Trammell v. State, 162 Tex. Crim. 543, 287 S.W.2d 487. Neither is applicable. In the Ball case the refusal to admit the evidence was based on the showing that the blood was not taken in accordance with the procedure required by the "Implied Consent Law", and those irregularities were not waived by a later consent. It is in that regard somewhat like our decision in State v. Weltha, supra, where the unauthorized person took the test and there was no later consent by defendant to the use of that result in the trial. In the Trammell case the State merely failed to prove actual consent needed under Texas law for the admission of blood test evidence. There was no issue as to implied consent.

Our attention has not been directed to any other jurisdictions having a similar "Implied Consent Law" where a different result has been reached, and we have found none. When the procedural requirements of the legislature have been followed, this law has been upheld and applied to permit evidence of the taking and testing before the court. Typical of the court's expression is that found in People v. Duroncelay, 48 Cal.2d 766, 772, 312 P.2d 690, 694, approved in People v. Huber, supra, pointing up the vital public interest involved in this

744

matter. "The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol on drivers. * * * So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard to the safety of the public. The extraction of blood for testing purposes is, of course, an experience which, every day, many undergo without hardship or ill effects. * * *." The maintaining of a "fair state-individual balance" is not violated by these processes. Breithaupt v. Abram and Schmerber v. California, both supra, and People v. Huber, supra, which distinguishes Chapman v. United States, 365 U. S. 610, 81 S. Ct. 776, 5 L. Ed.2d 828.

VI. We conclude here the showing was sufficient that an "emergency" or "exceptional circumstance" existed, the scientific reliability was established by proper authority, the taking of the sample of blood from defendant was done in a medically-approved manner, and the procedure did not constitute brutality or shock the conscience or deprive defendant of due process of law as set out in Rochin v. California, supra, 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183, 25 A. L. R.2d 1396, that this case falls squarely under the rules found in the decisions in Breithaupt v. Abram, supra, 352 U. S. 432, 77 S. Ct. 408, 1 L. Ed.2d 448, and People v. Huber, supra, 232 Cal. App.2d 663, 43 Cal. Rptr. 65, and must be affirmed.—Affirmed.

All JUSTICES concur.