**STATE, Plaintiff-Appellee, v. TITAK, Defendant-Appellant.**

Ohio Appeals, Seventh District, Columbiana County.

No. 731. Decided December 12, 1955.

James L. MacDonald, Pros. Atty., G. W. Brokaw, Asst. Pros. Atty., Lisbon, for plaintiff-appellee.

George A. Aronson, East Liverpool, for defendant-appellant.

## OPINION

By PHILLIPS, PJ.

Defendant was arrested between the hours of 6:30 and 7:00 o'clock P. M. on Saturday, July 31, 1954, while operating an automobile on U. S. Route 30 in St. Clair Township, Columbiana County, Ohio, and taken to the police station at East Liverpool, Ohio, where he was subjected, with his permission, to an intoxi-meter test, which indicated he was to some degree under the influence of intoxicating liquor. After that result

the arresting officer signed an affidavit, to which he did not swear until Monday morning, August second, in the Municipal Court of East Liverpool, charging defendant in that court with driving an automobile upon U. S. Route 30 in Columbiana County, Ohio, while under the influence of intoxicating liquor in violation of §4511.19 R. C.

Defendant challenged the jurisdiction of the Municipal Court of East Liverpool when he appeared there for trial, and the judge thereof placed defendant under recognizance to the Grand Jury of Columbiana County.

A jury in the court of common pleas found him guilty of such offense as charged in an indictment returned by the grand jury of Columbiana County, and from the final judgment and sentence of the judge of that court defendant appealed to this court on questions of law charging by assignment of errors:—

"1. That the court was without jurisdiction to hear and determine the cause.

"2. The allegations of the affidavit filed in this cause were not sufficient to constitute a crime or offense under the statutes of the state of Ohio or the Constitution of the United States and the State of Ohio.

"3. Error by the Municipal Court of East Liverpool, Ohio.

"4. That the court erred in admitting evidence offered by the State of Ohio to which admission defendant duly objected and excepted.

"5. That the proceedings as conducted were violative of the Fifth Amendment of the Constitution of the United States.

"6. That the court erred in his general charge after argument.

"7. That the judgment of the court is not sustained by sufficient evidence and is against the manifest weight of the evidence.

"8. That the judgment of the court is contrary to law."

The affidavit upon which the charge was based reads as follows:—

"Before me, the undersigned, Clerk of said Court, came Ptl. M. R. Darrah who, being duly sworn according to law, deposeth and saith that on or about the 31st day of July, 1954, John G. Titak did unlawfully operate a certain motor vehicle over and upon highway No. 30 in the Twp. of St. Clair and County of Columbiana. To wit did operate said vehicle while under the influence of alcohol. All in violation of and contrary to §4511.19 R. C."

The indictment returned by the Grand Jury of Columbiana County charges defendant with the following crime:—

"The State of Ohio

"Columbiana County, SS.

"Court of Common Pleas Case No. 6647

"Of the Term January in the year of our Lord, one thousand nine hundred and fifty-five.

"The Jurors of the Grand Jury of said County, on their oaths, in the name and by the authority of the State of Ohio, do find and present that John G. Titak late of said County, on or about the 31st day of July in the year of our Lord one thousand nine hundred and fifty-four at the County of Columbiana aforesaid, did unlawfully operate a motor vehicle upon a highway, to-wit U. S. Route No. 30 in St. Clair Township, he, the said John G. Titak, being then and there under the influence of intoxicating liquor. Contrary to §4511.19 R. C., and against the peace and dignity of the State of Ohio."

Defendant claims that §4511.19 R. C., is unconstitutional as not being specific, and that the affidavit drawn in pursuance thereto did not charge a crime under the Constitution of Ohio, and accordingly the Municipal Court and the Court of Common Pleas of Columbiana County lacked jurisdiction to hear and determine the charge against defendant.

It is settled law in Ohio that "the filing of the affidavit is prerequisite to the issuing of a warrant, and without the filing of a proper affidavit no jurisdiction is acquired." State v. Lanswer, 111 Oh St 23 at 26.

Further, it is claimed that the affidavit is faulty and insufficient because it charges that defendant operated the motor vehicle while under the influence of intoxicating liquor, while §4511.19 R. C., "under which this defendant was charged and tried, attempts to make it an offense to operate an automobile in this state while 'under the influence of intoxicating liquor'"; that "it can never be an offense to operate a motor vehicle while under the influence of intoxicating liquor. Under the influence of intoxicating liquor would apply to any person who had even a thimbleful of intoxicating liquor. The term 'influence of intoxicating liquor' and 'intoxication' are not synonymous because if they were the Legislature would not have used the two separate phrases 'state of intoxication,' or 'under the influence of intoxicating liquor. * * * The term 'under the influence of intoxicating liquor' is so uncertain that it is impossible for the defendant to properly defend the action nor can he tell from the affidavit what he is charged with. * * * The statute does not fix the degree of influence which the intoxicating liquor has on the driver. * * * This statute does not define a crime with sufficient certainty and therefore the proceedings being brought under this section are void and of no effect."

In a word defendant contends that to find defendant guilty as charged the state must prove that he was intoxicated rather than under the influence of intoxicating liquor for "under the influence of intoxicating liquor would apply to any person who had even a thimble full of intoxicating liquor."

We find no merit in this contention.

Appellee contends:—

"In law, the words 'under the influence' mean that the accused must have consumed some intoxicating beverage in such quantity that its effect on him was to adversely affect his action, reactions, conduct, movements, or mental processes in such manner as to deprive him of that clearness of intellect and control of himself which he would otherwise have possessed under the circumstances then existing. See State v. Steel, 95 Oh Ap 107; 52 O. O. 488."

This presented a question for the determination of the jury.

We cannot hold that §4511.19 R. C., is unconstitutional "because it does not define with nicety and precision just what constitutes 'under the influence of intoxicating liquor'". As stated by the state's counsel, to which we subscribe:—

"Apparently, the appellant feels that he has a constitutional right to be informed by the legislature just how much intoxicating liquor he can drink before he runs the risk of being arrested and prosecuted for operating a motor vehicle under the influence of intoxicating liquor."

We find no error prejudicial to the defendant in any of the respects charged in assigned grounds of error one nor two.

Defendant was arrested in St. Clair Township, where there were two duly elected and qualified Justices of the Peace, but was taken to the police station at East Liverpool in St. Clair Township and charged in the Municipal Court of that city as stated.

Defendant contends "that the municipal court was under a mandatory duty to make a final disposition of the case and was without any discretion after said plea was made by the defendant to do other than to determine the truth of the charge made against the defendant."

This the judge of the Municipal Court of East Liverpool refused to do or to state whether he was hearing the case as on preliminary hearing or as a final hearing, as shown by the following quoted from the record:—

"Mr. Cooper: By way of inquiry, does the court in taking jurisdiction under the Justice of the Peace statute, intend to finally determine the case today or just to hearing preliminary evidence?

"The Court: The position of the matter right now is that I don't know whether the defendant is guilty or not guilty. He has entered a plea of not guilty. The next thing is to judge whether he is guilty or not guilty. I don't know whether it is necessary for me to state in advance what position I will take."

The record discloses the following proceedings with reference to that question:—

"The Court: You have no intention of offering any defense?

"Mr. Aronson: No, sir. The solicitor has requested that the defendant be bound over to the Grand Jury and it is my understanding that that was his particular request of the Court—that he had produced enough evidence to bind him over to the Grand Jury, and it is on that point that I am raising my question again. If this is a preliminary hearing, I have no alternative. I do not think it would be good practice to put the defendant on in a preliminary hearing, and for that reason I am not putting him on.

"The Court: That might be true in some cases.

"Mr. Aronson: I will put him on with this understanding—that this is not considered a preliminary hearing.

"By the Court: It is entirely within the power of the defendant to make it a final hearing or a preliminary hearing  If the defendant doesn't make any defense, of course it will be a preliminary hearing. If the defendant does not want to submit himself to the Court for a final hearing, this will be considered a preliminary hearing. I am going to bind this defendant over to the Grand Jury under bond of $500.00. That is all."

Secs. 1901.02, 1901.20 and 2931.02 R. C. settle this question.

If defendant believed that the judge of the Municipal Court of East Liverpool should have heard the charges against him and the trial judge refused to do so he could have brought an action in mandamus to have compelled him to do so.

See State v. Wheelock, 64 Abs 129.

"Mandamus lies to compel municipal judge of city of Portsmouth to finally hear and dispose of criminal charge of violating §13049 GC.

providing penalty of fine and imprisonment, in view of §13423-1 GC (109 Ohio Laws, 62) and New Criminal Code (§§13422-1 to 13460-1 GC [113 Ohio Laws, 123-215]), notwithstanding municipal court created by 108 Ohio Laws, 462 et seq. (Sec. 1579-459 et seq., GC), has power of justice of peace to bind over to grand jury those charged with any offense; New Criminal Code, §§13433-10 and 13433-11 GC, being applicable only to preliminary examinations of persons charged with commission of both felonies and misdemeanors." **Sprague, Judge, v. The State, ex rel. Staples, 34 Oh Ap 354.**

Next defendant contends that the judge of the court of common pleas erred to his prejudice in admitting over his objection the state's evidence of an intoxi-meter test, made by a non-expert witness, showing influence of intoxicating liquor when arrested because "defendant. was entitled to be advised that anything that he did or said could be used against him, but nothing of the sort was done."

Defendant contends that the following quotation from **Booker v. Cincinnati, 5 O. O. 433**, is applicable to the instant case:—

"Under the privilege against self-incrimination guaranteed by **Section 10, Article I, Ohio Constitution**, a defendant charged with crime cannot be compelled to give evidence against himself, nor can the state compel him to submit to a medical or surgical examination the result of which may tend to convict him of a public offense."

Arguing this contention defendant claims that:—

"The defendant is entitled to every protection the law gives him and especially the right of not incriminating himself. In order that these tests be admissible in evidence it is a necessary prerequisite that he consent to the making of them. It is obvious that if the defendant is in such a mental state that he cannot give consent, then the test is equal to the taking by force or duress and such tests are not admissible in evidence. In the alternative, if the defendant was not drunk then he should have been admonished and warned that whatever he might do or say could be used in evidence against him and in this case the defendant was not so warned by the patrolman and/or if the defendant was 'drunk' as alleged by the State, then any data obtained from tests to which the defendant submitted were taken without his consent and are therefore inadmissible in evidence."

The record discloses the following procedure in which the trial judge interrogated the witness:—

"Q. One question Mr. Duke. Suppose the individual was driving an automobile at 6:00 o'clock in the evening, he was taken into custody at that time, he consumed no more alcohol between 6:00 o'clock and 7:00 o'clock when the test was given, the test would show the quantity of alcohol in his blood stream at 7:00 o'clock, is that right?

"A. That's right.

"Mr. Aronson: I object to this line of questioning.

"The Court: Yes, you may. What is the ground.

"Mr. Aronson: I feel the question by the court is more or less taking over with regard to what should be done by the prosecution.

"The Court: You may have your objection.

"Q. Assuming the conditions I have given you, had the test been

given at 6:00 o'clock, would the test show a higher or lower percentage of alcohol in the blood stream?

"A. I would say it would be higher.

"Q. And is that because a person ordinarily eliminates alcohol from his system?

"A. Yes, sir.

"Q. As time passes on?

"A. Yes, sir.

"The Court: That is all.

"Mr. Aronson: Can I have an objection to both of those questions Mrs. Rogers."

Counsel complains bitterly about such interrogation by the trial judge, among other things, because the trial judge led the witness which he would not have permitted counsel to do.

With reference to defendant's contention that "the proceedings as conducted were violative of the Fifth Amendment to the Constitution of the United States, because he was not informed when he submitted to the intoxi-meter test that the result thereof might be used against him on trial it is remembered that defendant submitted to the intoxi-meter test voluntarily.

See City of Columbus v. Glenn, 60 Abs 449, where it is said:—

"It is not prejudicial error or an invasion of a constitutional right of a defendant that, without being warned that it might be used against him, he gives a specimen of his urine to a police officer, which was analyzed and admitted in evidence."

We find no merit to the error assigned.

In his general charge to the jury the trial judge said:—

"In general it may be said that a person who has a concentration of alcohol in his blood stream of .05 of 1% or less is not under the influence of intoxicating liquor; that a person who has a concentration between .05 and .15 of 1% of alcohol in his blood stream may or may not be under the influence of intoxicating liquor, depending on other signs and symptoms of intoxication or lack of intoxication which may be observed at the time; and that a person who has a concentration of .15 of 1% or more of alcohol in his blood stream is under the influence of intoxicating liquor to a degree making it unsafe for him to operate a motor vehicle."

Defendant argues that the charge as quoted was prejudicially erroneous because "it is apparent that the court took unto himself the duties of the legislature. It was the duty of the legislature to define the exent of 'under the influence of intoxicating liquor,' and it could not delegate this duty to the court."

Further defendant charges that in his general charge to the jury the trial judge failed, and thereby erred to his prejudice, to "state the meaning of presumption of innocence" as required by §2945.04 R. C., where it is said:—

"A defendant in a criminal action is presumed to be innocent until he is proved guilty of the crime charged, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he shall be acquitted. This presumption of innocence places upon the state the burden of proving him guilty beyond reasonable doubt.

"Reasonable doubt is defined as follows: 'It is not a mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.'

"In charging a jury the trial court shall state the meaning of presumption of innocence, and read said definition of reasonable doubt."

We find no error prejudicial to defendant in this respect.

Read in conjunction with the charge in its entirety we do not so construe the quoted portion of the charge of the trial judge.

Now with reference to defendant's contention that the trial judge erred prejudicially to him in not reading the definition of reasonable doubt as stated in §2945.04 R. C., verbatim, it is held in **Beck v. State, 129 Oh St 582,** that failure to read the definition of reasonable doubt as set forth in this section is not reversible error where the court charges the jury on reasonable doubt substantially in accordance with such section, which we believe the trial judge did.

Finally it is urged that:—

"To summarize, the court of common pleas in his charge stated to the jury that it was a scientific fact that if the defendant had .15 of 1% of alcohol in his blood stream, he was under the influence of intoxicating liquor. It is not a scientific fact rather in the abstract it is argued among doctors and chemists that much depends upon the individual who has used the alcohol and that there are various other chemicals in the body and diseases that have similar effects as alcohol. That the court further erred in his instruction to the jury in that he failed to instruct them to consider the fact that the test was not better or worse than the individual who gave the test; that the results of the analysis, should be given such credulance in proportion to the experience and background of the individual analyzing the chemicals. It is urged that the court did both assume facts and did determine facts which were in dispute in the case and the determination of which should have been the duty of the jury and that such acts by the court of common pleas did prejudice the defendant."

With reference to the charge on the intoxi-meter test it is noted that the trial judge prefaced this portion of the charge "in general it may be said * * *."

The court did not charge the jury that it was a scientific fact that anyone with a concentration of fifteen hundredths of one percent of alcohol in the blood stream is intoxicated or even under the influence. The court did state that in general it may be said that a person who has a concentration of fifteen hundredths of one percent or more of alcohol in his blood stream is under the influence of intoxicating liquor.

The trial judge correctly permitted the results of this test to go to the jury as evidence but specifically directed in his charge that it was for the jury to determine from the evidence whether the defendant was or was not under the influence of intoxicating liquor at the time of operating the motor vehicle. Nothing in the general charge compelled

or directed the jury to do anything but consider and weigh this evidence along with all the rest of the evidence in the case. The jury could have rejected the evidence concerning the intoxi-meter test entirely.

The trial judge in his charge to the jury said "you have heard testimony as to such a method—the 'intoxi-meter test'—but the weight and credit you give to such method of measuring the amount of alcohol in defendant's blood is entirely for your determination."

There is no merit in this contention.

Now it is claimed by defendant that the intoxi-meter test was made by a member of the police department of the city of East Liverpool, who was not competent to make the test, and by reason thereof "the judgment of the court is not sustained by sufficient evidence and is against the manifest weight of the evidence" and contrary to law.

The tester's own evidence with reference to his qualifications discloses:—

"Q. I am saying did you receive some instructions?

"A. Yes, I was shown how to use it.

"Q. Who instructed you if you recall?

"A. I don't recall which one of the patrolmen it was.

"Q. Beg pardon.

"A. I don't recall which one of the patrolmen it was that explained it to me.

"Q. How many tests have you given, that is approximately?

"A. I would say somewhere between 8 and 12, I couldn't give you the exact amount without checking with the chemist."

It is conceded that the test is an extremely delicate one, and was conducted in public, and that the results thereof were not safeguarded by lock and key, and evidence that the tests were not made by experts as shown by the testimony of the tester:—

"Q. If it changes within 39 seconds what does that indicate according to the instructions?

"A. According to the instructions if that color is disseminated in the 39 seconds, the man is undoubtedly intoxicated. When this chemical clears, which it might take anywhere from 16 seconds up to 30-90 depending upon the amount of alcohol in the body, you replace the cork in it and remove the red top from the other chemical tube and allow the remaining air in the balloon of not less than two minutes' times to pass through this one tube and up through the other one and your alcohol collects into the chemicals in the tube and then it is resealed and your balloon and so forth is removed, your top replaced on it in a tight condition to prevent any escape of your alcohol or air from your tubes. It is replaced in your container, sealed and sent back to the chemist for his analysis."

Finally it is urged by defendant:—

"* * * that a test that is as delicate as the state claims should have been made by competent personnel with full experience or under the supervision of some one with experience and that the contents of the test should have been kept under lock and key and analyzed by a specialist and that where the analysis of said contents varies approximately 25% on two tests there is an indication that the tester is incompetent

or inaccurate or that some new chemical or influence has been inserted into the test.

"* * * That a test is so delicately balanced and so crudely analyzed; that is kept so haphazardly in the Police Station that anyone could view the test and that the chemicals are left unguarded in an unlocked container can have little probative value. * * *."

There is evidence of the guilt of defendant other than the intoximeter test sufficient in our opinion to support the verdict of the jury and judgment of the trial court entered thereon, and we cannot reverse that judgment and verdict on the ground that they are against the manifest weight of the evidence or contrary to law.

Judgment affirmed.

GRIFFITH, J, concurs.
NICHOLS, J, concurs in judgment.