STATE OF NEBRASKA, APPELLANT, v. ROBERT M. HAGEN, APPELLEE.

143 N. W. 2d 904

Filed July 8, 1966. No. 36330.

Thomas D. Brower and James D. Knapp, for appellant.

Van Steenberg, Myers & Burke, for appellee.

Heard before CARTER, J.

CARTER, J.

On November 9, 1965, the defendant was convicted in the county court of Kimball County for driving a motor vehicle on the public highways of the county while under the influence of intoxicating liquor, second offense. Defendant appealed to the district court. Defendant filed a motion to suppress the evidence pertaining to or leading up to the giving of a sample of urine for urinalysis, as provided by the implied consent law, in that it was in contravention of defendant's constitutional rights. The trial court sustained the motion and the county attorney has appealed pursuant to the provisions of section 29-826, R. R. S. 1943. The case has been briefed and orally argued to the writer of the opinion as the single judge assigned to hear and determine the issue in accordance with the procedure provided by sections 29-824 and 29-826, R. R. S. 1943.

The evidence is as follows: Defendant was operating his motor vehicle on a public highway when he was stopped by a state patrolman, given physical tests, and arrested for driving while under the influence of alco-

holic liquor. The patrolman testified that he advised the defendant that he was going to ask him some questions, told him that he did not have to answer, and that any answers given could be used against him as evidence in court. He testified he informed the defendant that when they got to the sheriff's office, he could call anyone he desired, including an attorney. The defendant made two telephone calls after arriving at the sheriff's office. The patrolman also requested and obtained a urine specimen from the defendant. The patrolman further testified that he advised defendant he could give either a blood or urine test and defendant elected to give a urine specimen. The patrolman said he told the defendant the following: "I stated that he was required by law to give a urine sample to show how much alcohol he had in his system either by a urine or blood test." He was then asked: "Did you tell him the state of the law in the event that he refused any such test?" His answer was: "Yes, sir, I stated it upon refusing to give a specimen to determine how much alcohol he had in his system that you could and you will go to court for what we called implied consent in refusing to give a test."

Defendant first contends that he was not adequately informed by the patrolman of his rights, in that he was not correctly informed of the consequences if he failed to give a blood or urine sample. The officer is not required to advise a defendant of the consequences of the failure to comply with the tests. As we said in State v. Oleson, *ante* p. 546, 143 N. W. 2d 917: "The patrolman was under no more obligation to advise the defendant that he could have an additional test by a physician of his own choosing than he was to inform him of his right to subpoena witnesses, to be confronted by his accusers, or not to testify without comment thereon by the prosecutor."

In a similar situation, the Supreme Court of Virginia said: "In Walton v. City of Roanoke, 204 Va. 678, 133

S. E. 2d 315, we said that 'the defendant was not compelled under § 18.1-55 to submit to the blood test. He had a choice of either allowing the test to be made or refusing it.' We adhere to that holding. However, the statute does not require an accused to submit to a blood test in order to avoid prosecution for refusing to take it, which may result in the suspension of his operator's license if such refusal is found to be unreasonable. He has the power to refuse to submit to the test but no right to refuse it. Since there exists no 'right to refuse' to submit to a blood test, the trooper was without authority to advise defendant that he had such a right. Furthermore, defendant orally consented to submit to the test so that it was not incumbent upon the trooper to advise him of the consequences if he refused. Had defendant refused to submit to the test, it then would have been the duty of the trooper to advise the accused that 'refusal to do so constitutes grounds for the revocation of the privilege of operating a motor vehicle upon the highways of this State.'" Caldwell v. Commonwealth, 205 Va. 277, 136 S. E. 2d 798. In State ex rel. Van Ermen v. Burke, 30 Wis. 2d 324, 140 N. W. 2d 737, dealing with a similar case, the court said: "Judge Schlichting's determination, that the evidence obtained from petitioner's person by the officers was obtained with petitioner's voluntary consent, is also supported by the weight of the evidence. * * * Furthermore, we are not aware of any holding by this court or the United States supreme court that a person accused of crime must be informed of any right to refuse to consent to a search being made of his person or premises."

It is contended that the failure to inform defendant correctly of the consequences of his refusal to give a test under the implied consent law vitiates the test taken. As we have heretofore shown, the arresting officer is not required to inform the defendant of such fact. But it is further urged that where the officer purports to inform a defendant of such consequences, he

must do so correctly. The complaint as to incorrectness is that the officer informed the defendant that if he refused to give a sample, he could and would have been taken to court instead of to the Director of Motor Vehicles as the law provides, for refusing the test under the implied consent law. It is asserted that the error resulted in coercing the defendant to give the test. The use of the word "court" instead of "Director of Motor Vehicles" is not an important element of information to the defendant. It is the fact that defendant subjects himself to a suspension of his driver's license that is important. Even if the patrolman were required to give correct information, the error was not material and does not constitute a threat, or duress, or coercion of the defendant. In Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N. W. 2d 75, 88 A. L. R. 2d 1055, we held that the privilege against self-incrimination is limited to the giving of oral testimony. It does not extend to the use of the defendant's body as physical or real evidence.

In State v. Oleson, *supra,* we said: "But irrespective of the facts in the instant case, the validity of the test is not impaired. The privilege against self-incrimination is limited to the giving of oral testimony and does not extend to defendant's body, nor to secretions therefrom, nor to the introduction of the chemical analysis in evidence. Swingle v. United States, 151 F. 2d 512; United States v. Nesmith, 121 F. Supp. 758; Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021; Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N. W. 2d 75, 88 A. L. R. 2d 1055."

I necessarily conclude that the taking of the urine sample in the instant case was taken with the implied consent of defendant, as well as with his express consent; that the privilege of self-incrimination was not violated; and that the defendant was adequately advised of his constitutional rights in the obtaining of the sample of urine for the purpose of determining its alco-

holic content. It is my opinion that the trial court was in error in suppressing the evidence of alcoholic content in the urine specimen provided by the defendant.

INTERLOCUTORY ORDER ENTERED.