STATE OF NORTH CAROLINA v. RALPH HARRELL McCABE.

(Filed 15 May 1968.)

Automobiles § 126;    Criminal Law § 64;    Constitutional Law § 33—
    Failure by officers to advise defendant of his right to refuse to take a breathalyzer test does not render the result of the test inadmissible in evidence, defendant having impliedly consented to the test by virtue of driving an automobile on the public highways of the State, G.S. 20-16.2, and the test having been administered after arrest and without the use of force or violence.

THIS is an appeal from *Cowper, J.* and a jury, October 1967 Criminal Session, LENOIR Superior Court.

The defendant was charged in a warrant with wilfully operating a motor vehicle on the public roads while under the influence of intoxicating liquors. The defendant entered a plea of not guilty. The jury found the defendant guilty and he was ordered to pay a fine of $100 and the court costs.

From this judgment, the defendant appeals and assigns as error the admission of a breathalyzer test, which test was administered after the defendant had been placed under arrest, but before the defendant had been advised of any of his constitutional rights.

The evidence discloses that the defendant and a male companion had attended drag races in Lenoir County on Sunday afternoon, 26 March 1967. After leaving the drag races, the defendant was in a line of traffic intending to return to his home in Goldsboro, North Carolina. The line of traffic stopped in front of the defendant, and the defendant, driving a Comet automobile, ran into the rear of a Chevrolet automobile causing the Chevrolet automobile to strike a Plymouth automobile which at the time was being operated by Trooper J. S. Irving, an officer of the North Carolina State Highway Patrol. The Plymouth automobile driven by Trooper Irving, in turn, struck a Ford automobile so that there were four automobiles involved in the collision.

As Trooper Irving got out of his automobile, he observed the defendant getting out of the driver's seat of the Comet automobile. The defendant had a handkerchief up to his mouth. Trooper Irving and the defendant met at the Chevrolet automobile and Trooper Irving asked the defendant to permit him to look at his mouth. When the defendant removed the handkerchief from his mouth, Trooper Irving saw that the defendant's mouth was bleeding and, likewise, at that time detected an odor of alcoholic beverage upon the breath of the defendant.

Trooper Irving by radio called Troopers Baker and Wallace to the scene of the wreck and Troopers Baker and Wallace proceeded to investigate the wreck.

Trooper Baker placed the defendant under arrest and took him to the police station in Kinston. The wreck occurred about 4:55 p.m. and Troopers Baker and Wallace arrived about 5:00 p.m.

At 6:10 p.m. State Highway Patrolman P. C. Eure, a duly licensed breathalyzer operator, administered a breathalyzer test to the defendant.

At the time of administering the breathalyzer test to the defendant, he had not been advised of his constitutional rights. He was taken into the room where the breathalyzer machine was located and the arresting officer, Trooper Baker, told him to sit down and take the breathalyzer test and he did so.

Sometime after the breathalyzer test had been administered, the arresting officer, Trooper Baker, advised him as follows:

"I told him he had the right to remain silent, that anything he said could be used against him in court; that he had the right to

have a lawyer and have him present while he was being questioned; that if he could not afford a lawyer he had the right to request the court to appoint one for him before he answered any questions; that if you decide to answer any questions without a lawyer that you may refuse to answer any particular question and stop answering at any time you wish to do so; having been advised of your rights do you want to answer questions now before you talk with a lawyer?"

To this, the defendant stated that he knew what his rights were and proceeded to answer questions.

The breathalyzer test revealed 0.20 per cent by weight of alcohol in the blood of the defendant, and it was to the admission of this report that the defendant objects and excepts and assigns error.

*T. W. Bruton, Attorney General; William W. Melvin, Assistant Attorney General and T. Buie Costen, Staff Attorney, for the State.*
*Braswell & Strickland by Thomas E. Strickland for defendant appellant.*

CAMPBELL, J.   It is to be noted that Troopers J. S. Irving, T. A. Baker, and P. C. Eure all testified that in their opinion the defendant was under the influence of some intoxicating beverage to an appreciable extent.

The only question presented is whether or not a breathalyzer test may be administered under these circumstances without first advising the accused that he has the right to refuse to take the test.

In our opinion and we so hold the answer to this question is "yes".

G.S. 20-16.2 provides: "(a)  Any person who operates a motor vehicle upon the public highways of this State or any area enumerated in G.S. 20-139 shall be deemed to have given consent, subject to the provisions of G.S. 20-139.1, to a chemical test of his breath for the purpose of determining the alcoholic content of his blood for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered upon request of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state or any area enumerated in G.S. 20-139 while under the influence of intoxicating liquor.

"(b)  If a person under arrest refuses to submit to a chemical test under the provisions of G.S. 20-16.2, evidence of refusal shall be admissible in any criminal action growing out of an alleged violation of driving a motor vehicle upon the public highways

of this State or any area enumerated in G.S. 20-139 while under the influence of intoxicating liquor. Provided: That before evidence of refusal shall be admissible in evidence in any such criminal action the court, upon motion duly made in apt time by the defendant, shall make due inquiry in the absence of the jury as to the character of the alleged refusal and the circumstances under which the alleged refusal occurred; and both the State and the accused shall be entitled to offer evidence upon the question of whether or not the accused actually refused to submit to the chemical test provided in G.S. 20-139.1."

In addition to the implied consent given by the defendant by virtue of driving an automobile on the public highways as provided in the statute above mentioned, the breath test in the instant case was administered only after the defendant had been arrested and as an incident to his arrest. It is to be noted that there was no force or violence used in making the test and there was no conduct that "shocks the conscience" or "offends a sense of justice." See the article entitled: "Chemical Tests and Implied Consent", 42 N. C. Law Review 841. *State of Ohio v. Titak*, 144 N.E. 2d 255. The case of *State v. Mobley*, 273 N.C. 471 is distinguishable on its facts.

Affirmed.

BROCK and PARKER, JJ., concur.