## Commonwealth v. Herjeczki

*George H. Hancher,* First Assistant District Attorney, for Commonwealth.

*Alfred V. Papa,* for defendant.

LYON, J., July 25, 1972.—Defendant was indicted for driving while under the influence of intoxicating liquor and he now seeks to suppress the evidence which was gathered by the police after his arrest. There are no factual issues since the case was submitted upon stipulations of counsel. However, the stipulated facts raise a multitude of issues. Many do not involve constitutional questions which are the only proper subject of a pretrial motion to suppress under Pa. R. Crim. P. 323. However, the parties jointly requested a decision on each issue raised by the stipulations because of existing confusion concerning the rights of an accused and the duties of law enforcement officers under the 1968 and 1969 amendments of the Implied Consent Statute.[1] Hence, even though it is apparent that the evidence must be suppressed because of an unlawful arrest, we shall separately consider the merits of the many reasons for suppression assigned by the accused.

The relevant statutory provisions provide:

"(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged with the operation of a motor vehicle or

[1] Act of April 29, 1959, P. L. 58, sec. 624.1, as amended, 75 PS §624.1.

tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons.

"(b) In any summary proceeding or criminal proceeding in which the defendant is charged with driving a motor vehicle or tractor while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood, as shown by a chemical analysis of his breath, his blood, or his urine, which analysis was conducted with equipment approved by the secretary and operated by qualified personnel, shall be admissible in evidence.

"(c) If chemical analysis of a person's breath, blood or urine shows—

"(3) That the amount of alcohol by weight in the blood of the person tested is ten one-hundredths (0.10) percent or more, it shall be presumed that the defendant was under the influence of intoxicating liquor.

"(e) Upon the request of the person tested, the results of any chemical test shall be made available to him or to his attorney.

"(g) The person tested shall be permitted to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such tests shall also be admissible in evidence.

"(h) The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt."

# I.
## PRESUMPTION

Defendant questions the constitutionality of the presumption that a person is under the influence of intoxicating liquor which under subsection (c)(3) of the statute arises from proof of a chemical test result showing the amount of alcohol by weight in the blood is ten one-hundredths (0.10) percent or more. The rule that a statutory presumption or inference must, in order to be constitutional, be based upon a rational connection between the fact proved and the ultimate fact presumed, as enunciated in Tot v. United States[2] was recently affirmed in Leary v. United States[3] where the court stated: ". . . we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend": Commonwealth v. Owens, 441 Pa. 318, 271 A. 2d 230 (1970).

In order to determine constitutionality of the presumption one must have direct or circumstantial data concerning the probability of a person being under the influence of liquor when the alcohol by weight in the blood is ten one hundredths (0.10) percent or more. Here there are no stipulations concerning the factual accuracy of the presumption of intoxication. But our research of the literature on the subject found little dissent from the proposition and revealed the conclusion of the scientific community based upon highly empirical data wholly supports the factual accuracy of the presumption. Cf. People v. Kovacik, 205 Misc. 275, 128 N. Y. Supp. 2d 492 (1954). Although such

[2] 319 U. S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943).
[3] 395 U. S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969).

information plainly is not within specialized judicial competence or completely commonplace, we are authorized to consider it when making our decision, particularly when no evidence on the subject is provided by the parties: Leary v. United States, supra; Commonwealth v. Owens, supra. Indeed, the presumption apparently was enacted to relieve the Commonwealth of the burden of having to adduce such evidence at every trial.

Pennsylvania's Implied Consent Statute is not an original work. In varying forms, substantially similar to the Pennsylvania statute, many other States have adopted similar provisions in their model vehicle codes. To our knowledge, none of them has been held to be an unconstitutional deprivation of procedural due process. Of course, this is not necessarily an indication that the Pennsylvania statute is constitutional. But it is indicative of the fact that legislators throughout the country have made extensive studies as to the relationship of alcohol in the blood and the chemical test results of the breath. We can only conclude that the accuracy of the breathalyzer test has been shown by scientific evidence sufficient to satisfy the conscience of the legislators: Commonwealth v. Strause, 51 D. & C. 2d 551 (1970).

## II.
## ARREST
### A.
### IS AN ARREST NECESSARY?

In Schmerber v. California,[4] blood tests were held to be searches within the meaning of the Fourth and Fourteenth Amendments. In that case Schmerber was taken to a hospital after suffering injuries in an automobile accident. While at the hospital the investi-

---

[4] 384 U. S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

gating officer noticed that Schmerber's breath smelled of alcohol and that his eyes were glassy and bloodshot. The officer arrested Schmerber for driving while under the influence of alcohol and over Schmerber's objection had a doctor perform a blood test. Schmerber was subsequently convicted. Reviewing that conviction, the Supreme Court held that the blood test was not an unreasonable search and seizure because it was incident to a valid arrest. While the court said that even a valid arrest would not justify a general exploratory search into an accused's person, it found the search to be reasonable because alcohol in the blood begins to dissolve shortly after drinking, thus constituting an emergency wherein any delay of the test in order to obtain a warrant would risk the destruction of the evidence.

The emergency doctrine, upon which the court in Schmerber seemed to rely in part, is the genesis of the Commonwealth's contention that an arrest is not required by Pennsylvania's Implied Consent Statute. Indeed, decisions of the appellate courts of the States of Iowa, New Jersey and California lend support to the proposition: State v. Findlay, 259 Iowa 733, 145 N. W. 2d 650 (1966); State v. Tolbert, 100 N. J. Super. Ct. 350, 241 A. 2d 865 (1968); People v. Huber, 232 Cal. App. 2d 663, 43 Cal. Rep. 65 (1965).[5] The Commonwealth argues the emergency doctrine is independent of any arrest requirement in its application. Thus, even if defendant were unlawfully arrested, the blood test would not be invalidated as the fruit of an unlawful arrest so long as probable cause for conducting the search is determined to have existed.

The emergency doctrine, although not specifically

---

[5] An arrest is statutorily required by the present California Implied Consent Statute.

discussed, was obviously considered and rejected by the Pennsylvania Supreme Court in Commonwealth v. Murray,[6] where a conviction of driving while intoxicated was reversed and a new trial granted. In that case the defendant was seriously injured in an automobile accident and removed to a hospital where a test of his blood was made by technicians at the instance of the investigating police officer. The test was made without defendant's consent or the prior issuance of a warrant. On the following day a complaint was filed with a justice of the peace and arrest warrants were issued. But because of defendant's condition and hospitalization, execution of the warrants was delayed until defendant was being discharged from the hospital, about two weeks later. In holding that the blood test results must be suppressed the court recognized that exigencies of existing circumstances may render a search valid even if not strictly contemporaneous with the arrest, but concluded the instant situation was not such a case and that therefore the use of the evidence at trial violated due process.

New York was the first State to enact an Implied Consent Statute. In Schutt v. MacDuff,[7] a New York court held that the statute violated the driver's constitutional right against unreasonable searches and seizures, since absent a requirement that the driver be placed under arrest prior to being subjected to the blood test, the statute was absolutely lacking in reasonable safeguards against arbitrary and unreasonable action by police officers. Since that decision most States have required an arrest either specifically by statute or by judicial construction.

---

[6] 441 Pa. 22, 271 A. 2d 500 (1970).

[7] 205 Misc. 43, 127 N. Y. Supp. 2d 116 (Super. Ct. 1954).

We hold today that a lawful arrest is a necessary constitutional and statutory prerequisite to the operation of Pennsylvania's Implied Consent Law. Subsection (a) of the statute expressly requires as a necessary condition precedent to the suspension of operating privileges for refusal to take the chemical test that the driver be placed "under arrest and charged with the operation of a motor vehicle . . . while under the influence of intoxicating liquor. . . ." It would be incongruous to accept the Commonwealth's contention that in a criminal proceeding the driver of an automobile, because of implied consent, must submit to a test prior to a lawful arrest when the Commonwealth concedes, as it must, that subsection (a) clearly requires a lawful arrest as a necessary prerequisite to operation of the Implied Consent Statute in civil proceedings for suspension of operating privileges. Subsection (a) plainly gives rise to two separate and distinct proceedings, one dealing with criminal procedure and the other with suspension of operating privileges, a civil proceeding: Commonwealth v. Royer, 213 Pa. Superior Ct. 17, 245 A. 2d 716 (1968). We cannot reasonably construe the "arrest and charge" provision to be applicable only to civil proceedings under the statute for such a construction would require the absurd conclusion that the legislature intended a defendant in a civil action to have more rights and greater protection than a defendant in a criminal case. Therefore, in construing subsection (a) the conclusion is reached that the legislature intended the "arrest and charge" requirement to be equally applicable to both the criminal and civil proceedings. To interpret subsection (a) so that a police officer is authorized to test an operator for intoxication before he is arrested and charged may well result in an attack being made upon the constitutional validity of the act.

The statute requires in addition to a lawful arrest

that the driver be "charged." The provision does not require a formal charge before a justice of the peace; a mere informal charge by the police officer is sufficient to make the statute operable. Merely informing the driver of the factual and legal basis of the offense is sufficient. Cf. Commonwealth v. Sundstrom, 17 Chester 220 (1969). It is almost common knowledge that the percentage of alcohol in the blood begins to diminish shortly after drinking stops and that a test taken two hours thereafter will not reflect the true state of intoxication when the vehicle was operated: State v. Findlay, supra, at page 743. If the driver were not tested for intoxication until after he was formally charged before a justice of the peace the test result would be useless in a high percentage of the cases: Commonwealth v. Thompson, 52 D. & C. 2d 260 (1970). Indeed, such a delay for formal arraignment would defeat the very purpose of the legislation which was enacted to provide stronger law enforcement against drunken drivers by increasing effectiveness in investigatory procedures such as breath tests and other scientific means used by police to determine the level of alcohol consumption: Morris Motor Vehicle Operator License Case, 218 Pa. Superior Ct. 347, 280 A. 2d 658 (1971). The value of such objective scientific evidence of intoxication to supplement the fallible observations by humans of behavior seemingly symptomatic of intoxication cannot be disputed. In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient and accurate system of detection, enforcement and, hence, prevention. The language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object: Swartley v. Harris, 351 Pa. 116, 40 A. 2d 409 (1944).

Courts of our sister States have reached a similar conclusion in both civil and criminal proceedings

under not greatly dissimilar implied consent statutes; our research revealed no decision where an implied consent statute was construed to require the filing of formal charges before administration of an authorized chemical test to determine intoxication: Smestad v. Ellingson, — N. D. —, 191 N. W. 2d 799 (1971); State v. Palmer, 291 Minn. 302, 191 N. W. 2d 188 (1971); Campbell v. Superior Court, 106 Ariz. 542, 479 P. 2d 685 (1971); State v. Macuk, 57 N. J. 1, 268 A. 2d 1 (1970); Deaner v. Virginia, 210 Va. 285, 170 S. E. 2d 199 (1969); State v. McCabe, 1 N. C. App. 237, 161 S. E. 2d 42 (1968); State v. Towry, 26 Conn. Sup. 35, 210 A. 2d 455 (1965); Finocchiaro v. Kelly, 11 N. Y. 2d 58, 226 N. Y. Supp. 2d 403 (1962).

We hasten to point out that it must not be inferred from the foregoing construction of the statute that compliance with Pa. R. Crim. P. 118 is unnecessary in all cases under the Implied Consent Law: Commonwealth v. Thompson, supra. The criminal procedural rule provides: "When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him." Under the rule, the duty to file formal charges arises from the warrantless arrest and not from the result of chemical tests under the Implied Consent Statute. What constitutes a necessary delay in filing formal charges must be determined from the circumstances accompanying each case. Here, we merely hold that the delay was necessary because there was no justice of the peace immediately available at the time of the arrest.

## B.
### LAWFUL ARREST

The States have power to develop workable rules governing arrests to meet the practical demands of effective criminal investigation and law enforcement

provided that those rules do not violate the constitutional standard of probable cause: Ker v. California, 374 U. S. 23, 10 L.Ed. 2d 726, 83 S. Ct. 1623 (1963). The criterion is more than satisfied by section 1204 of The Vehicle Code[8] which provides: "Peace officers, when in uniform and displaying a badge or other sign of authority, may arrest, upon view, any person violating any of the provisions of this act . . ." The offense charged against the accused is a misdemeanor under The Vehicle Code. The parties agree the arrest of defendant was bottomed upon probable cause and does not satisfy the "arrest on view" standard of the statute.

The Commonwealth's position is that defendant was lawfully arrested upon probable cause. As authority for the position it cites the provision of subsection (a) of the Implied Consent Statute which authorizes administration of the chemical breath test "at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor." We disagree.

That provision is not concerned with arrest procedures, but instead merely promulgates procedural requirements for administration of a chemical breath test. It is not in any way inconsistent with the "arrest on view" standard of section 1204. We can find no evidence that the legislature intended subsection (a) of the Implied Consent Statute to invest law enforcement officers with broader powers of arrest. Courts of our sister States have reached the same conclusion when passing upon the identical question under not greatly dissimilar implied consent statutes: State v. Nixon, 102 Ariz. 20, 423 P. 2d 718 (1967) Colling v. Hjelle, — N. D. —, 125 N. W. 2d 453 (1964); Huth v. Woodward, 108 Ohio App. 135, 161 N. E. 2d 230 (1958). Our

---

[8] Act of April 29, 1959, P. L. 58, sec. 1204, 75 PS §1204.

conclusion concerning the necessity of an arrest on view is in accord with Pennsylvania lower court decisions: Commonwealth v. English, 53 D. & C. 2d 668 (1971); Reese License, 51 D. & C. 2d 112 (1971); Commonwealth v. Stone, 50 D. & C. 2d 685 (1970); Commonwealth v. Gilliland, 51 D. & C. 2d 35 (1970); Commonwealth v. Klinedinst, 82 York 198 (1969). In addition, we note that the common law standard for a warrantless arrest was adopted in Rule 102 of the Pennsylvania Supreme Court Rules of Criminal Procedure which permits such an arrest of a suspected misdemeanant only when the offense is committed in the presence of the arresting officer: Commonwealth v. Pincavitch, 206 Pa. Superior Ct. 539, 214 A. 2d 280 (1965).

We realize the "arrest on view" standard places a serious burden on the police in cases where the offense was not committed in the presence of the officer. When the offense is not committed in the officer's presence an arrest warrant must be obtained and a chemical test authorized by the Implied Consent Statute must be administered substantially contemporaneous with the arrest: Commonwealth v. Murray, supra. The problem has caused some States to adopt a probable cause standard for the offense of operating a motor vehicle while under the influence of intoxicating liquor: Smestad v. Ellingson, — N. D. —, 191 N. W. 2d 799 (1971). The subject is currently under consideration in the Pennsylvania Legislature in House Bill 1615.

The stipulation of the parties clearly raises the additional question of whether we are required to suppress all of the evidence which the police gathered from the defendant after the illegal arrest. While admitting the chemical test result is the fruit of police illegality, the Commonwealth insists that much of the

other evidence should not be suppressed. The contention is bottomed upon the authority of Wong Sun v. United States[9] which promulgated the rule: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Here, it is unnecessary to decide whether any of the evidence was purged of the primary taint since the parties have also stipulated that the evidence was obtained from defendant while he was illegally detained. This places the case squarely within the "illegal detention rule" of Davis v. Mississippi[10] where the court held: "'If one such product of illegal detention is proscribed, by the same token all should be proscribed.'"

### III.
### CONSENT TO TAKE THE BREATH TEST

Defendant contends the administration of the breath test was unlawful because: (1) It violated his Fifth Amendment right against self-incrimination, and (2) it was given in the absence of his express consent and a warning that he could refuse to take it.

It is reasonable to require a person to submit to a chemical test of his breath, blood or urine if arrested for driving while under the influence of intoxicating liquor. It has been well settled since Schmerber v. California, supra, that chemical tests of the breath,

---

[9] 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).
[10] 394 U. S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969).

blood or urine as provided by the Implied Consent Statute do not violate the privilege against self-incrimination. In Schmerber the court found that the privilege against self-incrimination is only a "bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it": 384 U. S. at page 764, 86 S. Ct. at page 1832.

Prior to the amendment in 1968, subsection (a) of the Implied Consent Statute read as follows: "Any person who operates a motor vehicle or tractor in this Commonwealth may be given a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That he gives specific consent thereto . . ." The 1968 amendment to subsection (a) made significant changes and omitted the language requiring a specific consent. The Legislature thereby clearly expressed their intention to eliminate the requirement. A change of language in a statute ordinarily implies a purposeful alteration in substance. If the Legislature had intended to retain specific consent as a prerequisite to administration of a breath test, it could have done so in the amended statute: People v. Kerrigan, 8 Mich. App. 216, 154 N. W. 2d 43 (1967).

Under Pennsylvania's Implied Consent Statute any person who operates a motor vehicle or tractor in the Commonwealth is deemed to have given his consent to a chemical test of his breath. If he is placed under arrest and charged with the operation of a vehicle while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given; however, that person's license is subject to suspension for a six month period independent of any suspension or revocation imposed by virtue of the conviction. The

statute does not give a person a right to refuse to submit to the test, only the physical power: Commonwealth v. Thompson, supra; Deaner v. Virginia, supra; State v. Kenderski, 99 N. J. Super. Ct. 224, 239 A. 2d 249 (1968); State v. McCabe, supra; State v. Hagen, 180 Neb. 564, 143 N. W. 2d 904 (1966). We agree with the court in Bush v. Bright[11] that the "obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriants."

Since there existed no right to refuse to submit to a breath test, the police officer was without authority to advise defendant that he had such a right. When he refused to submit to the test, it then became appropriate for the officer to warn the accused that refusal to do so constitutes grounds for suspension of the privilege of operating a motor vehicle upon the highways of this State: State v. Macuk, supra; Caldwell v. Commonwealth, 205 Va. 277, 136 S. E. 2d 798 (1964). But he may not use impermissible physical force to obtain a sample of the driver's breath[12] nor may he coerce the driver's consent by the promise that he would be released if he submitted to the test and would be committed to the county jail if he persisted in the refusal: Commonwealth v. Perrino, no. 13 of 1971 (C. P., Lawrence County, Crim. Div.).

## IV.
## EVIDENCE OF REFUSAL TO TAKE THE TEST

Defendant delayed taking the test for some 15 minutes after a police request to submit to it. He now

---

[11] 284 Cal. App. 2d 788, 71 Cal. Rptr. 123 (1968).

[12] Rochin v. California, 342 U. S. 165, 96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R. 2d 1396 (1952).

raises the question of whether the jury should be allowed to consider evidence of his testimonial and nontestimonial conduct during that 15 minute period, contending that it is inadmissible on three grounds: (1) that the duration of the delay was insufficient to constitute a refusal to take the test, (2) that the evidence of delay is irrelevant since he subsequently took the test, and (3) that his constitutional right against self-incrimination is violated by subsection (h) of the Implied Consent Statute which provides that evidence of refusal to submit to the chemical tests shall be admissible as a factor to be considered in determining innocence or guilt. We disagree.

It has long been the rule that evidence of a defendant's statements and conduct after a lawful arrest is relevant on the issue of guilt or innocence. In Pennsylvania the consent to take the chemical test is given when a person operates a motor vehicle. It is not a qualified consent and it is not a conditional consent, and therefore there can be no qualified refusal or conditional refusal to take the test: Morris Motor Vehicle Operator License Case, supra; Deaner v. Virginia, supra; State v. Oleson, 180 Neb. 546, 143 N. W. 2d 917 (1966). The question of whether particular conduct constitutes a refusal to take the test is often most critical in civil proceedings for suspension of operating privileges, but the admissibility of such evidence in either a criminal or civil case does not depend upon its sufficiency to show such a refusal. Nor can a defendant make such evidence incompetent by subsequently submitting to a chemical breath test.

The delay in submitting to the test may sometimes have no relation to the question of guilt or innocence. On the other hand, the circumstances accompanying the delay may justify an inference of guilt: Westerville v. Cunningham, 15 Ohio St. 2d 121, 239 N. E. 2d 40

(1968). Defendant's interest at the time of trial will be adequately protected by his right to explain the delay and the right of his counsel to argue reasonable alternatives to consciousness of guilt. The effect to be given to the evidence of delay is then a matter for the discretion of the jury.

Defendant next takes the position that evidence of his delay in submitting to the test, whether verbal or nonverbal, is sufficiently communicative under Schmerber that comment upon such refusal violates the privilege against self-incrimination. There is some authority to support the proposition that comment upon the refusal of a person to submit to a chemical test violates the privilege against self-incrimination. A review of these cases reveals that they are largely from States which recognize a statutory right to refuse to submit to the test. On the other hand, States which do not recognize a statutory right to refuse to submit to a chemical test allow comment upon such refusal: People v. Sudduth, 65 Cal. 2d 543, 55 Cal. Rptr. 393, 421 P. 2d 401 (1967). See 87 A. L. R. 2d 370.

In People v. Ellis[13], the court held that it was not a violation of the privilege against self-incrimination to comment upon the refusal of a defendant to speak for the purpose of voice identification because the refusal was not testimonial communication. The court said: "Nor was defendant's refusal to 'display his voice' itself a testimonial communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody . . . false alibi . . . flight . . . suppression of evidence . . . , and failure to respond to accusatory statements when not in police custody, . . . its admission does not violate the privilege." The court in

---

[13] 65 Cal. 2d 529, 55 Cal. Rptr. 385, 421 P. 2d 393 (1966).

People v. Sudduth, supra, reached the same conclusion while holding that since a suspect does not have a constitutional right to refuse to take a breathalyzer test, comment upon such refusal is proper.

It is the opinion of this court that since a person does not have a right to refuse to submit to the test and because the refusal itself is not "testimonial communication" that comment upon such refusal is not improper. The sole rationale for the rule against comment on a failure to testify is that such a rule is a necessary protection for the exercise of the underlying privilege of remaining silent. A wrongful refusal to cooperate with law enforcement officers does not qualify for such protection. A refusal that might operate to suppress evidence of intoxication, which disappears rapidly with the passage of time, should not be encouraged as a device to escape prosecution: People v. Sudduth, supra, at page 403.

## V.

### RIGHT TO COUNSEL

Defendant next contends that he was denied his right to counsel under the Sixth Amendment of the United States Constitution because he was not advised, prior to the administration or attempted administration of the breath test, that he could consult with his attorney in order to make a decision as to whether or not he should submit to the test.

The United States Supreme Court in United States v. Wade, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), held that an accused has a right to the assistance of counsel at any critical stage of the prosecution. In Wade the court found that a line-up was such a critical stage. However, the court recently limited

the application of Wade to post indictment lineups.[14] Hence, Wade does not require the presence of counsel when a defendant before indictment is given a chemical test determining intoxication.

In Schmerber v. California, supra, the court rejected a similar right to counsel claim because "[N]o issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented": 384 U.S. at page 766, 86 S. Ct. at page 1833.

As previously noted, under Pennsylvania's Implied Consent Law a person does not have a right to refuse to submit to a chemical test—only the physical power; therefore, as in Schmerber, there is no issue of counsel's ability to assist respondent in respect of any rights he did possess. It is the opinion of this court that respondent was not entitled to the assistance of counsel in deciding whether or not to submit to the breathalyzer test. Cf. Department of Transportation v. Cannon, 4 Comm. Ct. 119 (1972); Deaner v. Virginia, supra; State v. Kenderski, supra; State v. Oleson, supra.

We do not mean to suggest by our conclusion that law enforcement officers may, without justification, prevent access between an accused and his lawyer, available in person or by immediately telephoned communication, if requested by the accused and such access does not interfere with administration of the chemical test. Cf. Escobedo v. Illinois, 378 U.S. 478, 12 L. Ed 2d 977, 84 S. Ct. 1758 (1964); Morris Motor Vehicle Operator License Case, supra.

## VI.
## MIRANDA WARNINGS

Defendant next takes the position that lack of

---

[14] Kirby v. Illinois, 11 Cr. L. 3072 (1972).

Miranda warnings require suppression of the following: (1) his answers to a pretest interrogation conducted by the police, (2) statements which he volunteered while in custody, (3) evidence concerning his non-testimonial conduct, and (4) the result of the breath test administered to him.

A person arrested for driving under the influence of alcohol, in violation of section 1037 of The Vehicle Code, is entitled to Miranda warnings before being subjected to custodial interrogation, even though such violation constitutes only a misdemeanor: Commonwealth v. Bonser, 215 Pa. Superior Ct. 452, 258 A. 2d 675 (1969). To determine whether a defendant should have been given Miranda warnings, it must be decided if there was "custodial interrogation." The United States Supreme Court in Miranda v. Arizona[15] stated: "By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." In the recent case of Commonwealth v. Marabel,[16] the Pennsylvania Supreme Court concluded: "It is our view that the proper test was applied in Myers v. State, 3 Md. App. 534, 240 A. 2d 288 (1968), wherein the court stated: '[C]ustody occurs if a suspect is led to believe, as a reasonable person, that he is being deprived or restricted of his freedom of action or movement under pressures of official authority . . . [T]he custody requirement of Miranda does not depend on the subjective intent of the law enforcement officer-interrogator, but upon whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably be-

---

[15] 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

[16] 445 Pa. 435, 283 A. 2d 285 (1971).

lieves that his freedom of action or movement is restricted by such interrogation.' . . . The above test has the element of objectiveness since we look at what the suspect could believe as a reasonable man, and by focusing on the suspect, compliance with the thrust of the Miranda decision is achieved." Here there was custodial interrogation under the Marabel test. Defendant had been placed under arrest and was in custody at the police station when the questioning took place. His answers given during that interrogation must be suppressed as the poisoned fruit of the unlawful interrogation: Davis v. Mississippi, supra; Wong Sun v. United States, supra.

The remaining three items of evidence will not be suppressed. Miranda has no application to volunteered statements[17] or to nontestimonial evidence. The Supreme Court of New Jersey in State v. Macuk, supra, held that chemical tests of bodily substances to determine the amount of alcohol in the blood and physical coordination tests constitute nontestimonial evidence; that such tests did not violate an accused's right against self-incrimination and that therefore Miranda was inapplicable. Cf. State v. Hagen, supra.

## VII.
### MISCELLANEOUS WARNINGS

Defendant lastly asserts that before administering the test the police officer should have warned him: (1) that he had a right to have a physician of his own choosing administer another chemical test determin-

---

[17] Miranda v. Arizona, supra, at page 478; Commonwealth v. Bordner, 432 Pa. 405, 247 A. 2d 612 (1968); Commonwealth v. Jefferson, 423 Pa. 541, 226 A. 2d 765 (1967).

ing intoxication, (2) that the chemical test result can be used against him, and (3) that he had a right to counsel.

There must exist a right to counsel for one to be legally entitled to a warning of that right. We have before in this opinion held that an accused has no statutory or constitutional right to the assistance of counsel when the chemical test is administered under the provisions of the Implied Consent Statute: State v. Oleson, supra. See Section V, supra.

Subsection (g) of the Implied Consent Statute specifically provides for the right of a person tested to have a physician of his own choosing administer another chemical test determining intoxication. The provision was construed in Commonwealth v. Dierkes[18] which held that the chemical test result must be excluded from evidence until it is proved that defendant was timely informed of his right to have a physician of his own choosing administer another chemical test as provided by subsection (g). The same question was considered subsequently by the same county court in Commonwealth v. Gallagher. There the lower court followed its Dierkes rule and sustained the appeal from the suspension of operating privileges. The case was then appealed to the Commonwealth Court in Commonwealth v. Gallagher, 3 Comm. Ct. 371 (1971). In reversing the lower court, that appellate court stated: ". . . we find no support in the statute for the contention that the legislature intended that persons charged with drunken driving must be told that they may have the additional test." We are therefore compelled under Gallagher to hold that there is no duty to warn a driver being tested under the pro-

---

[18] 51 D. & C. 2d 389 (1970).

visions of the Implied Consent Statute that he has a right to have a physician of his own choosing administer another chemical test. The entire subject was recently reviewed in an extremely able opinion by President Judge Stranahan in Commonwealth v. Ode, 53 D. & C. 2d 563 (1971). We can add nothing to what was said in that excellent opinion.

When a police officer seeks to obtain self-incriminating, testimonial evidence from a defendant he is obligated to first warn him that such evidence can be used against him in a court of law: Miranda v. Arizona, supra. We have already noted in this opinion that the right against self-incrimination is not violated by the provisions of the Implied Consent Statute authorizing the administration of chemical tests determining intoxication; and that the chemical test result constitutes nontestimonial evidence. See Sections III, IV and VI, supra.

We hold that a police officer therefore has no duty before administering a chemical test under the Implied Consent Statute to warn a defendant either of his right to have a physician of his own choosing administer an additional chemical test determining intoxication, or of his right to counsel or that the chemical test result can be used against him in a court of law. The absence of such warnings violates no constitutional or statutory right of an accused.

## ORDER OF COURT

Now, this July 25, 1972, for the reasons stated in the foregoing opinion, it is ordered, adjudged and decreed that all evidence gathered by the police after the arrest of defendant be suppressed.